**Ernest Dewayne JONES, Petitioner,**

v.

**Kevin CHAPPELL, Warden of California State Prison at San Quentin, Respondent.**

**Case No. CV 09–02158–CJC.**

United States District Court, C.D. California.

Signed July 16, 2014.

Michael Laurence and Cliona R. Plunkett, Habeas Corpus Resource Center, San Francisco, CA, for petitioner.

James W. Bilderback, II, Sarah Jean Farhat and Herbert S. Tetef, Office of Attorney General of California, Los Angeles, CA, for respondent.

## ORDER DECLARING CALIFORNIA'S DEATH PENALTY SYSTEM UNCONSTITUTIONAL AND VACATING PETITIONER'S DEATH SENTENCE

CORMAC J. CARNEY, District Judge.

On April 7, 1995, Petitioner Ernest Dewayne Jones was condemned to death by

the State of California. Nearly two decades later, Mr. Jones remains on California's Death Row, awaiting his execution, but with complete uncertainty as to when, or even whether, it will ever come. Mr. Jones is not alone. Since 1978, when the current death penalty system was adopted by California voters, over 900 people have been sentenced to death for their crimes. Of them, only 13 have been executed. For the rest, the dysfunctional administration of California's death penalty system has resulted, and will continue to result, in an inordinate and unpredictable period of delay preceding their actual execution. Indeed, for most, systemic delay has made their execution so unlikely that the death sentence carefully and deliberately imposed by the jury has been quietly transformed into one no rational jury or legislature could ever impose: *life in prison, with the remote possibility of death.* As for the random few for whom execution does become a reality, they will have languished for so long on Death Row that their execution will serve no retributive or deterrent purpose and will be arbitrary.

That is the reality of the death penalty in California today and the system that has been created to administer it to Mr. Jones and the hundreds of other individuals currently on Death Row. Allowing this system to continue to threaten Mr. Jones with the slight possibility of death, almost a generation after he was first sentenced, violates the Eighth Amendment's prohibition against cruel and unusual punishment.

## BACKGROUND

### A. Delay in California's Death Penalty System

California juries have imposed the death sentence on more than 900 individuals since 1978.[1] Yet only 13 of those 900 have been executed by the State. Of the remainder, 94 have died of causes other than execution by the State, 39 were granted relief from their death sentence by the federal courts and have not been resentenced to death, and 748 are currently on Death Row, having their death sentence evaluated by the courts or awaiting their execution.[2]

The simplest explanation for the size of California's Death Row is that in each year since 1978, more individuals have been sentenced to death than have been removed from Death Row. *See* Commission Report at 121 (showing historical growth in the size of California's Death Row). As the size of California's Death Row grows larger and larger, so too do the delays associated with it. Of the 748 inmates currently on California's Death Row, more

---

1. In 1977, five years after the California Supreme Court first invalidated the State's death penalty statute, *see People v. Anderson*, 6 Cal.3d 628, 100 Cal.Rptr. 152, 493 P.2d 880 (1972), the California Legislature acted to reinstate the punishment. One year later, the current death penalty system took form, when voters passed Proposition 7, known as the Briggs Initiative, amending the death penalty statute and significantly expanding the circumstances under which prosecutors could seek the death penalty. *See* California Commission on the Fair Administration of Justice, Final Report 120 (Gerald Uelmen ed., 2008) ["Commission Report"], *available at* http://www.ccfaj.org/documents/CCFAJFinalReport.

pdf ("Under the death penalty statute now in effect, 87% of California's first degree murders are 'death eligible'....").

2. *See* Cal. Dep't of Corr. & Rehab., Condemned Inmate List (July 2014), *available at* http://www.cdcr.ca.gov/capital-punishment/docs/condemnedinmatelistsecure.pdf. Despite having been granted relief by the federal courts, 10 of the 39 individuals are listed by the CDCR as being among the 748 inmates currently on Death Row. *See id.* In at least some of these cases, this may be explained by the State's intention to again seek the death penalty against these inmates in a new trial.

than 40 percent, including Mr. Jones, have been there longer than 19 years.[3] Nearly all of them are still litigating the merits of their death sentence, either before the California Supreme Court or the federal courts.[4] *See* Appendix A.[5]

For those whose challenge to the State's death sentence is ultimately denied at each level of review, the process will likely take 25 years or more. *See* Gerald Uelmen, *Death Penalty Appeals and Habeas Proceedings: The California Experience*, 93 Marq. L.Rev. 495, 496 (2009) ("Typically, the lapse of time between sentence and execution is twenty-five years, twice the national average, and is growing wider each year."). The majority of that time will likely be spent litigating before the California Supreme Court. *See* Dkt. No. 109-3, Exh. 15 ["Laurence Decl."] ¶ 15 (noting that for inmates who had their

state habeas petitions decided between 2008 and 2014, the average delay between sentencing and disposition of the petition was 17.2 years). There is no evidence to suggest that the trend is reversing.

Of course, the vast majority of those sentenced to death in California will not actually be executed by the State. Indeed, the most common way out of California's Death Row is not death by State execution, but death by other means. Of the 511 individuals sentenced to death between 1978 and 1997, 79 died of natural causes, suicide, or causes other than execution by the State of California. *See* Appendix A. Another 15 sentenced after 1997—or two more than the total number of inmates that have been executed by California since the current death penalty system took form—have died of non-execution causes.[6] As California's Death Row popu-

---

**3.** *See* Cal. Dep't of Corr. & Rehab., Condemned Inmate Summary List at 2 (June 2014) ["CDCR Summary"], *available at* http://www.cdcr.ca.gov/Capital_Punishment/docs/CondemnedInmateSummary.pdf.

**4.** Those sentenced to death in California proceed through a post-conviction review process that begins with a mandatory automatic appeal to the California Supreme Court. If that appeal is denied, an inmate may seek collateral review of the death sentence, again from the California Supreme Court. If state habeas relief is denied, an inmate may then pursue collateral review of the death sentence from the federal courts. If relief is denied at each of these levels, then the inmate may be executed.

**5.** Between 1978 and 1997, 591 new death judgments were issued in California. *See* Cal. Dep't of Justice, Criminal Justice Statistics Center, Homicide in California, 2011 at tbl. 35, *available at* http://oag.ca.gov/sites/all/files/agweb/pdfs/cjsc/publications/homicide/hm11/hm11.pdf. Appendix A describes the current case status of 511 individuals sentenced in that time period. It does not include individuals whose death sentences were overturned by the California Supreme Court, unless subsequently reinstated. Because

most of the death sentences overturned by the California Supreme Court were overturned in the period between 1979 and 1986, inclusion of those sentences in Appendix A would not accurately reflect the current state of affairs in the California death penalty system. *See* Commission Report at 120 n. 21 (noting that between 1979 and 1986, the California Supreme Court reversed 59 of 64 death judgments it reviewed, but that since that time, it has reversed death judgments less than 10 percent of the time). Appendix A also does not include individuals whose post-conviction proceedings have been stayed based on their lack of mental competency to face the death penalty. Finally, Appendix A does not include individuals sentenced to death after 1997 because state proceedings are ongoing for all but a small handful, and none have completed the federal habeas process.

**6.** *See* Cal. Dep't of Corr. & Rehab., Condemned Inmates Who Have Died Since 1978 (2014) (showing that since 1978, 63 inmates have died of natural causes, 22 have committed suicide, 8 have died of other causes, including drug overdose or violence on the exercise yard, and 1 has been executed by another state), *available at* http://www.cdcr.ca.gov/Capital_Punishment/docs/

lation gets older, that number is sure to rise. *See* CDCR Summary at 1 (showing that nearly 20 percent of California's current Death Row population is over 60 years old).

For those that survive the extraordinary wait for their challenge to be both heard and decided by the federal courts, there is a substantial chance that their death sentence will be vacated. As of June 2014, only 81 of the 511 individuals sentenced to death between 1978 and 1997 had completed the post-conviction review process. Of them, 32 were denied relief by both the state and federal courts—13 were executed, 17 are currently awaiting execution, and two died of natural causes before the State acted to execute them.[7] *See* Appendix A. The other 49—or 60 percent of all inmates whose habeas claims have been finally evaluated by the federal courts— were each granted relief from the death sentence by the federal courts.[8] *See id.*

## B. The Nature of Delay in California's System

The nature of the delay in California's administration of its death penalty system has been comprehensively studied, including by the State itself. In 2004, the California State Legislature established the California Commission on the Fair Administration of Justice (the "Commission"), and tasked it with conducting a comprehensive review of the State's justice system, including its administration of the death penalty. *See* Commission Report at 113–14. The Commission, a bipartisan panel which was composed of prosecutors, criminal defense attorneys, law enforcement officials, academics, representatives of victim's rights organizations, elected officials, and a judge, issued its Final Report in June 2008. Its conclusion was a stern indictment of the State's death penalty system:

> California's death penalty system is dysfunctional. The system is plagued with

---

CONDEMNEDINMATESWHOHAVEDIED SINCE1978.pdf.

7. These 17 inmates are awaiting execution because since 2006, federal and state courts have enjoined executions by California. In 2006, the federal district court for the Northern District of California enjoined the State from executing Death Row inmate Michael Morales on grounds that, as administered, the State's lethal injection protocol "create[d] an undue and unnecessary risk that an inmate will suffer pain so extreme" that it violated the Eighth Amendment's prohibition against cruel and unusual punishment. *See Morales v. Tilton*, 465 F.Supp.2d 972, 974, 976–77 (N.D.Cal.2006). The State subsequently amended the protocol, but because those amendments were not promulgated in compliance with the State's Administrative Procedures Act (APA), the Marin County Superior Court enjoined executions under them. *See Morales v. Cal. Dep't of Corr. & Rehab.*, 168 Cal.App.4th 729, 732, 85 Cal.Rptr.3d 724 (2008). In response to the ruling, the State undertook to promulgate a lethal injection protocol through the APA's rulemaking pro-

cess. After the regulations went into effect in August 2010, Death Row inmate Mitchell Sims sued to enjoin executions under the amended protocol, again for failure to comply with the APA. The state court agreed, invalidating the regulations for substantial failure to comply with the requirements of the APA, and permanently enjoining executions in California until the State is able to adopt an execution protocol that complies with its own procedural law. *See Sims v. Dep't of Corr. & Rehab.*, 216 Cal.App.4th 1059, 157 Cal. Rptr.3d 409 (2013). California is therefore without any execution protocol by which to execute the 17 Death Row inmates who have been finally denied relief by both the state and federal courts, or to execute any other inmates who may similarly be denied relief in the near future.

8. The State resentenced 10 of these individuals to death, thus starting anew the post-sentencing appeal process on the renewed sentences, though two have since died while on post-conviction review for the second time. *See* Appendix A.

excessive delay in the appointments of counsel for direct appeals and habeas corpus petitions, and a severe backlog in the review of appeals and habeas petitions before the California Supreme Court.

*Id.* at 114–15.[9] The Commission is not alone in reaching this determination. In 2008, then-Chief Justice of the California Supreme Court Ronald M. George offered the same assessment. *See* Ronald M. George, *Reform Death Penalty Appeals,* L.A. Times, Jan. 7, 2008 ("The existing system for handling capital appeals in California is dysfunctional and needs reform. The state has more than 650 inmates on death row, and the backlog is growing.") (cited in Commission Report at 164–65 n. 3). Ninth Circuit Court of Appeals Senior Judge Arthur L. Alarcón has suggested the same in his study of the issue. *See* Arthur L. Alarcón & Paula M. Mitchell, *Executing the Will of the Voters?: A Roadmap to Mend or End the California Legislature's Multi–Billion–Dollar Death Penalty Debacle,* 44 Loy. L.A. L.Rev. S41, S61 (2011) (describing California's "broken" death penalty system).

In reaching these conclusions, the Commission and others have documented the source and nature of the delay in California's death penalty system. Their studies confirm that delay is evident at each stage of the post-conviction review process, including from the time the death sentence is issued.

### 1. Delay on Direct Appeal

In California's death penalty system, delay sets in at the first step of post-conviction review—direct appeal. California law mandates that after a death sentence is imposed, it must be automatically appealed to the California Supreme Court for review. *See* Cal.Penal Code § 1239. To pursue that appeal, indigent Death Row inmates are entitled to the assistance of court-appointed counsel.[10] *See* Cal.Penal Code § 1240. But inmates must wait years—on average, between three and five years—until counsel is appointed to represent them. *See* Commission Report at 122. Indeed, as of June 2014, there were 71 Death Row inmates awaiting appointment of counsel for their direct appeal. Dkt. No. 116 ["Laurence Supplemental Decl."] ¶ 3. Unsurprisingly, until such counsel is appointed, there is effectively no activity on the inmate's case.

This delay is likely due to the severe shortage of qualified attorneys available to accept appointment as counsel on direct appeal. To be appointed, attorneys must have at least four years of active law practice, experience in felony appeals, completion of training, and demonstrated proficiency in appellate skills. Commission Report at 132 (citing Cal. Rule of Court Rule 8.605(d)). Notably, however, the Commission did not find a general dearth of lawyers able to meet these qualifications or willing to take on the representation of Death Row inmates. Rather, the Commission found the State's underfunding of its death penalty system to be a key

---

**9.** Even the commissioners who dissented from the Commission Report agreed "wholeheartedly" that "delay on appeal and in habeas corpus in state and federal court is excessive and frustrates the effective administration of the death penalty." Commission Report at 164 (separate statement of Commissioners Totten, Boscovich, Cottingham, Dunbar, and Hill).

**10.** That a Death Row inmate is indigent is essentially a foregone conclusion. Of the 670 inmates on California's Death Row in 2008, each was indigent and therefore entitled to the assistance of court-appointed counsel in the post-conviction review process. *See* Commission Report at 121.

source of the problem. *Id.* For example, the Commission noted that despite the high volume of applicants willing to represent Death Row inmates from the security of an agency setting, the Office of the State Public Defender's budget has been cut and its staff reduced. *Id.* (recommending that "[t]he most direct and efficient way to reduce the backlog of death row inmates awaiting appointment of appellate counsel would be to again expand the Office of the State Public Defender"). Similarly, as to appointments of private counsel, the Commission found that the low rate at which private appointed counsel are paid by the State is "certainly a significant factor in the decline of the pool of attorneys available to handle death penalty appeals." *Id.; see also* Arthur L. Alarcón, *Remedies for California's Death Row Deadlock*, 80 S. Cal. L.Rev. 697, 734 (2007) ["Alarcón Study"] ("Private practitioners who can bear the financial sacrifice of accepting court-appointment at the present hourly rates are scarce.").

Once counsel is eventually appointed, that counsel must learn the trial record, which often totals more than 9,000 pages, must research the law, and must file an opening brief with the California Supreme Court. *See* Commission Report at 131. Including the time spent by the State to file a responsive brief, and by counsel for the inmate to file a reply brief, the briefing process will typically consume under four years. *Id.* The parties must then wait for the case to be scheduled for argument before the California Supreme Court. On average, the California Supreme Court generally hears between 20 and 25 death penalty appeals per year, and so another two to three years will likely pass before arguments are scheduled and the case is subsequently decided. *Id.* Taken together then, from the sentence of death to the California Supreme Court's disposition of the automatic appeal, between 11.7 and 13.7 years will have elapsed, *see id.*, with inmates spending much of that time waiting for counsel to be appointed and for oral argument to be scheduled.

### 2. Delay on State Collateral Review

Whereas on direct review the inmate challenges issues raised at the trial and sentencing, on collateral review the inmate may attack the legality of his confinement based on issues that normally cannot be determined in the direct appeal process, including claims of ineffective assistance of counsel at trial. As on direct appeal, indigent Death Row inmates are entitled to the assistance of state-appointed counsel to pursue their habeas petitions. *See* Cal. Gov't Code § 68662. Unless the inmate requests that the same counsel provide representation both on direct appeal and during collateral review, California law directs that different counsel be appointed at each stage. Cal. Gov't Code § 68663. The majority of counsel appointed in capital habeas cases are private attorneys, though a number of inmates receive the assistance of the Habeas Corpus Resource Center ("HCRC"), the entity created by the Legislature to provide habeas representation to Death Row inmates.[11] *See*

---

11. Whether an inmate receives the assistance of the HCRC or a private attorney may significantly affect the extent of delays in the inmate's post-conviction review proceedings. Whereas the HCRC may be able to provide continuous representation in both the inmate's state and federal habeas claims, the same is not true of private attorneys appointed to represent Death Row inmates in their state habeas proceedings, who generally do not continue to provide representation in federal proceedings as well. *See* Commission Report at 137. As the Commission found, "[c]ontinuity of representation by the same lawyer in both state and federal habeas corpus proceedings helps to reduce many of the delays that now occur in state and federal habeas proceedings." *Id.*

Laurence Decl. ¶ 11 (in fiscal years 2005 to 2012, the HCRC was appointed, on average, in 43 percent of state habeas cases).

The California Supreme Court has noted that "[i]deally, the appointment of habeas corpus counsel should occur shortly after an indigent defendant's judgment of death" so as to "enable habeas corpus counsel to investigate potential claims for relief and to prepare a habeas corpus petition at roughly the same time that appellate counsel is preparing an opening brief on appeal." *In re Morgan*, 50 Cal.4th 932, 937, 114 Cal.Rptr.3d 591, 237 P.3d 993 (2010). An expeditious appointment "would ensure the filing of a habeas corpus petition soon after completion of the briefing on the appeal." *Id.* Yet as of June 2014, 352 inmates—nearly half of Death Row—were without habeas corpus counsel. *See* Laurence Decl. ¶ 7. And that number is up from 291 inmates awaiting appointment of habeas counsel in 2008. *See* Commission Report at 134; *see also* Laurence Decl. tbl. 1 (showing that in all but one year since 1999, the total number of Death Row inmates awaiting the appointment of habeas counsel has increased). The growing backlog of appointments can again be traced to underfunding issues similar to those on direct appeal. *See* Commission Report at 135 (describing the below-market rates at which appointed habeas counsel are paid, and the low cap on funds made available to conduct habeas investigations and retain necessary experts); Alarcón Study at 738 (same). And unless the State is able to reverse the current trend, the backlog of Death Row inmates

awaiting habeas counsel will only continue to grow. *See* Laurence Supplemental Decl. ¶ 5 (noting that over the past five years, the State has issued an average of 22.8 death judgments per year compared with only 9.4 annual appointments of habeas counsel over the same period).

The Commission found in 2008 that, far from meeting the California Supreme Court's ideal, habeas counsel is generally not appointed until between eight and ten years after the imposition of the death sentence. *See* Commission Report at 134. And the length of delay is growing. Currently, of the 352 inmates without habeas counsel, 159 have been awaiting appointment of such counsel for more than ten years. *See* Laurence Supplemental Decl. ¶ 4; Laurence Decl. ¶ 8. Further, there are 76 inmates whose direct appeals have been fully denied by the California Supreme Court, but still lack habeas counsel. *See* Laurence Supplemental Decl. ¶ 4. They have already waited an average of 15.8 years after the imposition of their death sentence for habeas counsel to be appointed, and are still waiting. *Id.*

Once habeas counsel is appointed, that counsel must learn the trial record, investigate any potential constitutional or statutory claims, and file the habeas petition with the California Supreme Court.[12] To be presumed timely, the petition must be filed either within 180 days after the final due date for filing the appellant's reply brief on direct appeal or within 36 months after the appointment of habeas counsel, whichever is later.[13] Then, in most cases,

---

12. Given that habeas petitions at both the state and federal level often include claims of ineffective assistance of counsel, the appointed habeas counsel is often required to reinvestigate the inmate's case to discover whether any additional mitigating evidence might have been presented to the jury, but was not for lack of adequate representation during the

guilt and penalty phases of the inmate's trial. *See* Commission Report at 133–34. As noted above, however, such investigation may be hampered by underfunding, which may in turn further delay the federal habeas process. *See id.* at 135; Alarcón Study at 738.

13. *See* Supreme Court Policies Regarding Cases Arising from Judgments of Death, Poli-

the State will only file an informal reply to the petition before it is decided by the California Supreme Court. *See* Laurence Decl. ¶ 17 (noting that of the 729 habeas petitions resolved on the merits by the California Supreme Court since 1978, the court has issued orders to show cause, requiring the Attorney General to formally respond to the petition, in only 99 cases, and held evidentiary hearings only 45 times).

In 2008, the Commission estimated that after a habeas petition was filed, it would take the California Supreme Court 22 months on average to decide it. *See* Commission Report at 134. But that delay has more than doubled since the Commission's report was issued. Of the 176 capital habeas petitions currently pending before the California Supreme Court, the average amount of time that has elapsed since each petition was filed is 49 months. Laurence Supplemental Decl. ¶ 6. Similarly, of the 68 capital habeas petitions the court has decided since 2008, it has taken an average of 47.8 months for the California Supreme Court to issue a decision once each petition was fully briefed. Laurence Decl. ¶ 14. In all, by the time the inmate's state habeas petition is decided, he will likely have spent a combined 17 years or more litigating his direct appeal and petition for state habeas review before the California Supreme Court.[14] *See id.* ¶ 15.

### 3. Delay on Federal Collateral Review

When an inmate's state habeas petition is denied, the inmate may seek relief in federal court by alleging that the State has violated his federal constitutional rights. Federal habeas proceedings are significantly affected by the habeas proceedings before the state court. Federal courts are generally limited in their review by the legal and factual determinations of the state court. 28 U.S.C. § 2254(d). Moreover, if an inmate discovers new facts in the federal proceeding that were not before the California Supreme Court when it decided the state habeas petition, that inmate must generally halt the federal proceeding and return to the California Supreme Court by way of an exhaustion petition to present to it the new facts and exhaust the state remedy. *See* 28 U.S.C. § 2254(b).

As of 2008, the complete federal habeas review process, including initial review by the district court, appeal to the Ninth Circuit, and possible petitions for en banc and Supreme Court review, took an average of 10.4 years. *See* Commission Report at 123, 137. While certainly lengthy, "[m]uch of the delay in federal habeas corpus proceedings ... is attributable to the need to exhaust state remedies and to conduct investigations." Alarcón Study at 750. For

---

cy 3, Timeliness Standard 1–1.1 (as amended Nov. 30, 2005), *available at* http://www.courts.ca.gov/documents/PoliciesMar2012.pdf. At the time Mr. Jones filed his state habeas petition in 2002, the Policy required the petition to be filed within 90 days after the final due date for the filing of the appellant's reply brief on direct appeal or within 24 months after the appointment of habeas counsel, whichever is later.

**14.** When the California Supreme Court does rule on a capital habeas petition, it usually does so by way of a summary unpublished opinion. For example, the California Su-

preme Court denied Mr. Jones's habeas petition in a mere 202 words, excluding citations. *See* Jones (Ernest Dewayne) on H.C., No. S110791 (Cal. Mar. 11, 2009, amended Mar. 16, 2009), *available at* http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=1842470&doc-no=S110791. The Commission noted that much of the delay in federal habeas proceedings "is attributable to the absence of a published opinion and/or an evidentiary hearing in the state courts" because "[o]ften, the federal courts cannot ascertain why state relief was denied." Commission Report at 123.

example, since 1978, Death Row inmates have filed 268 exhaustion petitions in the California Supreme Court after initiating federal habeas proceedings. Laurence Supplemental Decl. ¶ 7; *see also* Alarcón Study at 749 (noting that approximately 74 percent of federal habeas proceedings are stayed at some point during the proceeding for exhaustion of state remedies). The average time that elapses before that exhaustion petition is decided by the California Supreme Court is 3.2 years. Laurence Supplemental Decl. ¶ 7; *see also* Alarcón Study at 749 (finding that, as of 2007, "[t]he average delay for the exhaustion of state remedies before the California Supreme Court [was] 2.8 years").

Ultimately, since 1978 only 81 inmates—of the more than 900 individuals sentenced to death in California—have received a final determination on the merits of their federal habeas petitions.[15] Less than half of those 81 have been denied relief at all levels, and only 13 have actually been executed. *See* Appendix A. Of the 17 that are currently awaiting their execution, each has been on Death Row for more than 25 years, and eight have been there for more than 30 years. *Id.* More inmates will ultimately be denied relief at each stage of review, but when or whether they will be executed is unclear. Indeed, not one inmate has been executed in California since 2006. *See id.*

## C. Mr. Jones's Claim

After Mr. Jones was sentenced to death in April 1995, he waited approximately four years before the State appointed counsel to represent him in his direct appeal. Then, another four years later, on March 17, 2003, the California Supreme Court affirmed Mr. Jones's conviction. *People v. Jones,* 29 Cal.4th 1229, 131 Cal. Rptr.2d 468, 64 P.3d 762 (2003). After certiorari was denied by the United States Supreme Court, the judgment became final on October 21, 2003. *Jones v. California,* 540 U.S. 952, 124 S.Ct. 395, 157 L.Ed.2d 286 (2003). In total, Mr. Jones spent about eight years litigating his direct appeal before the California Supreme Court—considerably less time than the 12 to 14 years spent by most individuals on California's Death Row.

Mr. Jones's state habeas counsel was appointed on October 20, 2000, five years after he was sentenced to death and while he was still litigating his direct appeal. By October 21, 2002, Mr. Jones's counsel—the Habeas Corpus Resource Center, which continues to represent him in this federal habeas proceeding—filed his state habeas petition. Six and a half years later, and over five years after the petition was fully briefed, on March 11, 2009 the California Supreme Court denied Mr. Jones's petition in an unpublished order. No hearing was conducted, and no briefing was provided by the State beyond an informal reply.

Finally, on March 10, 2010, Mr. Jones filed his petition for federal habeas relief. *See* Dkt. No. 26. Briefing on the petition was completed in January 2014, and the Court is reviewing his claims. On April 28, 2014, Mr. Jones amended Claim 27 of his petition to broaden the nature of his claim of unconstitutional delay in California's administration of its death penalty system. *See* Dkt. No. 105 ["First Am. Pet."]. Mr. Jones's new claim asserts that as a result of systemic and inordinate delay in California's post-conviction review process, only a random few of the hun-

---

**15.** This number includes two inmates who technically never had their petitions decided by the federal courts because they voluntarily withdrew their petitions, choosing to be exe-cuted immediately by the State rather than have their habeas petitions finally decided by the federal courts.

dreds of individuals sentenced to death will be executed, and for those that are, execution will serve no penological purpose. *Id.*

## ANALYSIS

 The Eighth Amendment prohibits the imposition of cruel and unusual punishment by the state. Although reasonable people may debate whether the death penalty offends that proscription, no rational person can question that the execution of an individual carries with it the solemn obligation of the government to ensure that the punishment is not arbitrarily imposed and that it furthers the interests of society. As the American tradition of law has long recognized, death is a punishment different in kind from any other. *See, e.g., Harmelin v. Michigan,* 501 U.S. 957, 995, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (noting the "qualitative difference between death and all other penalties"); *Coleman v. McCormick,* 874 F.2d 1280, 1288 (9th Cir.1989) ("The finality and severity of a death sentence makes it qualitatively different from all other forms of punishment."). Indeed, in its finality, the punishment of death "differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

Recognizing that solemn obligation, in 1972 the United States Supreme Court invalidated the death sentences of the three petitioners appearing before it, and signaled that as it was then being imposed across much of the country, the death penalty violated the Eighth Amendment. *See Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) (per curiam).

In *Furman,* the Court encountered state sentencing schemes by which judges and juries were afforded virtually untrammeled discretion to decide whether to impose the ultimate sanction. The result was that the death penalty was being imposed in an at best random manner against some individuals, with "no meaningful basis for distinguishing the few cases in which it [was] imposed from the many cases in which it [was] not." *See id.* at 313, 92 S.Ct. 2726 (White, J., concurring). While no majority opinion controlled in *Furman,* the Supreme Court agreed that such an outcome was abhorrent to the Constitution, holding that the death penalty "could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner." *See Gregg v. Georgia,* 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion) (describing *Furman's* holding). Put another way, the Constitution quite simply "cannot tolerate the infliction of a sentence of death under legal systems that permit this unique penalty to be so wantonly and so freakishly imposed." *Furman,* 408 U.S. at 310, 92 S.Ct. 2726 (Stewart, J., concurring). In the 40 years since *Furman,* the Supreme Court has never retreated from that fundamental principle.

The *Furman* decision was rooted in part in the Court's recognition that arbitrary imposition of the death penalty could not justly further the penological goals of society—deterrence and retribution. *See id.* at 312, 92 S.Ct. 2726 (White, J., concurring) ("At the moment that [the death penalty] ceases realistically to further these purposes, ... its imposition would then be the pointless and needless extinction of life with only marginal contributions to any discernible social or public purposes. A penalty with such negligible returns to the State would be patently excessive and cruel and unusual punish-

**1062**

ment violative of the Eighth Amendment."). Indeed, in *Gregg v. Georgia,* when the Supreme Court lifted what had become *Furman's* de facto moratorium on the death penalty, it did so with the understanding that such punishment should serve these "two principal social purposes." 428 U.S. at 183, 96 S.Ct. 2909. Since that time, the Supreme Court has harkened back to these twin purposes to guide its evaluation of challenges to the death penalty under the Eighth Amendment. *See, e.g., Kennedy v. Louisiana,* 554 U.S. 407, 441, 128 S.Ct. 2641, 171 L.Ed.2d 525 (2008) ("[C]apital punishment is excessive when it is grossly out of proportion to the crime or it does not fulfill the two distinct social purposes served by the death penalty: retribution and deterrence of capital crimes."). They are bedrock principles of the Constitution's promise to not permit the infliction of cruel and unusual punishment by the State.

## A. Arbitrariness in California's Death Penalty System

■ California's death penalty system is so plagued by inordinate and unpredictable delay that the death sentence is actually carried out against only a trivial few of those sentenced to death. Of the more than 900 individuals that have been sentenced to death since 1978, only 13 have been executed. For every one inmate executed by California, seven have died on Death Row, most from natural causes. The review process takes an average of 25 years, and the delay is only getting longer. Indeed, no inmate has been executed since 2006, and there is no evidence to suggest that executions will resume in the reasonably near future. Even when executions do resume, the current population of Death Row is so enormous that, realistically, California will still be unable to execute the substantial majority of Death Row inmates. In fact, just to carry out the sen-

tences of the 748 inmates currently on Death Row, the State would have to conduct more than one execution a week for the next 14 years. Such an outcome is obviously impossible for many reasons, not the least of which is that as a result of extraordinary delay in California's system, only 17 inmates currently on Death Row have even completed the post-conviction review process and are awaiting their execution. *See* Appendix A. For all practical purposes then, a sentence of death in California is a sentence of life imprisonment with the remote possibility of death—a sentence no rational legislature or jury could ever impose.

Of course, for an arbitrarily selected few of the 748 inmates currently on Death Row, that remote possibility may well be realized. Yet their selection for execution will not depend on whether their crime was one of passion or of premeditation, on whether they killed one person or ten, or on any other proxy for the relative penological value that will be achieved by executing that inmate over any other. Nor will it even depend on the perhaps neutral criterion of executing inmates in the order in which they arrived on Death Row. Rather, it will depend upon a factor largely outside an inmate's control, and wholly divorced from the penological purposes the State sought to achieve by sentencing him to death in the first instance: how quickly the inmate proceeds through the State's dysfunctional post-conviction review process.

Mr. Jones's case is illustrative. Mr. Jones is now in his fifth year of federal review, and given that the final briefing on the merits of his claims was completed in January, a decision from this Court could be rendered by the end of the year. On average, review at the Ninth Circuit will take another 2.2 years. *See* Commission Report at 123. Accounting then for the

time spent seeking en banc review from the Circuit and certiorari from the United States Supreme Court, and assuming relief is denied at every level, the federal stay on Mr. Jones's execution could be lifted and he could be ready for execution within three or four years—about 23 years after he was first sentenced to death.

By comparison, of the 380 inmates included in Appendix A who are currently on Death Row, 285 have been there longer than Mr. Jones. *See* Appendix A; *see also* CDCR Summary at 2 (showing that about 40 percent of all inmates have been on Death Row longer than Mr. Jones). Over a third of them are engaged in state court proceedings. *See* Appendix A (showing that 109 of the 285 inmates who have been on Death Row longer than Mr. Jones have state proceedings ongoing). In all likelihood, given the delays in the post-conviction review process, most of them will never face execution as a realistic possibility, unlike Mr. Jones. Similarly, of the 38 Death Row inmates who like Mr. Jones were sentenced to death in 1995, only 7, including Mr. Jones, have completed the state habeas review process. *See id.* Were his petition denied today, Mr. Jones would be one of three inmates sentenced in 1995 to have his federal habeas petition under review by the Ninth Circuit, effectively the last available stage before execution. Again, because of the inordinate delays inherent in California's system, many of the rest will never be executed. They will instead live out their lives on Death Row. *See* Gerald Uelmen, *Death Penalty Appeals and Habeas Proceedings: The California Experience,* 93 Marq. L.Rev. 495, 496 (2009) ("For all practical purposes, a sentence of death in California is a sentence of life imprisonment without the possibility of parole.").

For Mr. Jones to be executed in such a system, where so many are sentenced to death but only a random few are actually executed, would offend the most fundamental of constitutional protections—that the government shall not be permitted to arbitrarily inflict the ultimate punishment of death. *See Furman,* 408 U.S. at 293, 92 S.Ct. 2726 (Brennan, J., concurring) ("When the punishment of death is inflicted in a trivial number of the cases in which it is legally available, the conclusion is virtually inescapable that it is being inflicted arbitrarily. Indeed, it smacks of little more than a lottery system."). To be sure, *Furman* specifically addressed arbitrariness in the selection of who gets sentenced to death. But the principles on which it relied apply here with equal force. The Eighth Amendment simply cannot be read to proscribe a state from randomly selecting which few members of its criminal population it will sentence to death, but to allow that same state to randomly select which trivial few of those condemned it will actually execute. Arbitrariness in execution is still arbitrary, regardless of when in the process the arbitrariness arises.

## B. The Penological Purpose of California's Death Penalty System

The systemic delay and dysfunction that result in the arbitrary execution of California's Death Row inmates give rise to a further constitutional problem with the State's administration of its death penalty system. In California, the execution of a death sentence is so infrequent, and the delays preceding it so extraordinary, that the death penalty is deprived of any deterrent or retributive effect it might once have had. Such an outcome is antithetical to any civilized notion of just punishment.

### 1. Deterrence

Whether the death penalty has any deterrent effect when administered in a functional system is a widely contested issue upon which no clear empirical con-

sensus has been reached. But even when administered in a functional system, few could dispute that long delays preceding execution frustrate whatever deterrent effect the death penalty may have. Indeed, the law, and common sense itself, have long recognized that the deterrent effect of *any* punishment is contingent upon the certainty and timeliness of its imposition. *See, e.g., Harmelin,* 501 U.S. at 989, 111 S.Ct. 2680 ("[D]eterrent effect depends not only upon the amount of the penalty but upon its certainty. . . ."); *United States v. Panico,* 308 F.2d 125, 128 (2d Cir.1962) ("There can be little doubt that the effectiveness of punishment as a deterrent is related not only to the quality of the possible punishment but to the certainty and promptness as well."), *vacated on other grounds,* 375 U.S. 29, 84 S.Ct. 19, 11 L.Ed.2d 1 (1963); *see also* Commission Report at 115 n. 8 (agreeing that "[i]f there is a deterrent value [to the death penalty], . . . it is certainly dissipated by long intervals between judgment of death and its execution"). In the death penalty context, where finality of punishment is not achieved until the actual execution of the inmate, the case is no different.

In California, the system in which the death penalty is administered can only be described as completely dysfunctional. The delay inherent in California's system is so extraordinary that it alone seriously undermines the continued deterrent effect of the State's death penalty. *See Chief Justice Ronald George Reflects on Death Penalty, Prop. 8,* The California Report, Dec. 6–8, 2013 ("[O]ne of the rationales for the death penalty is a deterrent effect that it . . . has on a certain number of cases, . . . and when there's so much delay as there is now—25 years' worth is the average stay on death row—I think it loses its justification.").[16] But delay is not the only problem. Executions by the State are so few and far between that since 1978, of the 900 individuals sentenced to death in California, only 13 have been executed. The reasonable expectation of an individual contemplating a capital crime in California then is that if he is caught, it does not matter whether he is sentenced to death— he realistically faces only life imprisonment. Under such a system, the death penalty is about as effective a deterrent to capital crime as the possibility of a lightning strike is to going outside in the rain.[17]

## 2. Retribution

■ Just as inordinate delay and unpredictability of executions eliminate any deterrent effect California's death penalty might have, so too do such delay and unpredictability defeat the death penalty's retributive objective. It is true that the Supreme Court has consistently affirmed the view that retribution, as "an expression of society's moral outrage at particularly offensive conduct," is a constitutionally permissible aim of capital sentencing schemes. *See Gregg,* 428 U.S. at 183, 96 S.Ct. 2909. But no reasonable jurist could

16. *Available at* http://www.californiareport.org/archive/R201312061630/c.

17. In 1995, the same year Mr. Jones was sentenced to death, now-Chief Judge of the Ninth Circuit Court of Appeals Alex Kozinski commented that as it then existed in the United States, the "death penalty . . . has no deterrent value because it is imposed so infrequently and so freakishly." *See* Alex Kozinski & Sean Gallagher, *Death: The Ultimate Run–On Sentence,* Lecture, 46 Case W. Res. L.Rev. 1, 25 (Fall 1995). In the nearly 20 years since, the evidence is clear that the problem has only gotten worse. California has made true then-Justice Rehnquist's remark—perhaps hyperbolic at the time—that "the existence of the death penalty in this country is virtually an illusion." *See Coleman v. Balkcom,* 451 U.S. 949, 957–58, 101 S.Ct. 2994, 68 L.Ed.2d 334 (1981) (Rehnquist, J., dissenting from the denial of certiorari).

dispute that inordinate delay frustrates that aim. *See Coleman*, 451 U.S. at 960, 101 S.Ct. 2994 (Rehnquist, J., dissenting from the denial of certiorari) ("There can be little doubt that delay in the enforcement of capital punishment frustrates the purpose of retribution."); *Ceja v. Stewart*, 134 F.3d 1368, 1374 (9th Cir.1998) (Fletcher, J., dissenting) ("[T]he ability of an execution to provide moral and emotional closure to a shocked community diminishe[s] as the connection between crime and punishment [becomes] more attenuated and more arbitrary."); Lewis Powell, *Capital Punishment*, Commentary, 102 Harv. L.Rev. 1035, 1041 (1989) ("The retributive value of the death penalty is diminished as imposition of sentence becomes ever farther removed from the time of the offense.").

In California, a Death Row inmate will likely wait at least 25 years before his execution becomes even a realistic possibility. Were such lengthy delay an isolated, or even necessary, circumstance of a system that otherwise acts purposefully to give meaning to society's moral outrage, the retributive purpose of the death penalty might continue to be served. Here, however, the delay is systemic, and the State itself is to blame. The State has allowed such dysfunction to creep into its death penalty system that the few executions it does carry out are arbitrary. Whereas few have been or will eventually be executed by California, the vast majority of individuals sentenced to death—each of whom, in the State's view, committed crimes sufficiently reprehensible to warrant death—will effectively serve out terms of life imprisonment. *See* Appendix

A. This reality of delay and dysfunction created by the State simply cannot be reconciled with the asserted purpose of retribution. *See Furman*, 408 U.S. at 304–05, 92 S.Ct. 2726 (Brennan, J., concurring) ("The asserted public belief that murderers ... deserve to die is flatly inconsistent with the execution of a random few."); *id.* at 311, 92 S.Ct. 2726 (White, J., concurring) ("[W]hen imposition of the [death] penalty reaches a certain degree of infrequency, it would be very doubtful that any existing general need for retribution would be measurably satisfied.").

### C. Petitioners' Fault in Creating Delay

■ As the State correctly notes, courts have thus far generally not accepted the theory that extraordinary delay between sentencing and execution violates the Eighth Amendment. *See, e.g., People v. Anderson*, 25 Cal.4th 543, 606, 106 Cal. Rptr.2d 575, 22 P.3d 347 (2001) ("[A]ppellate delay in a capital case is not cruel and unusual punishment."). When courts have rejected the theory, however, they have often not addressed whether any penological purpose of the death penalty continues to be served more than two decades after the death sentence was imposed. Rather, courts often rely on two justifications for rejecting the theory: first, that the delay is reasonably related to the state's effort to safeguard the inmate's constitutional rights by ensuring the accuracy of its death conviction and sentence, and second, that the delay is caused by the petitioner himself, and therefore cannot be constitutionally problematic.[18] The facts here,

---

**18.** For example, in *Anderson*, the California Supreme Court found that "the automatic appeal process following judgments of death is a constitutional safeguard, not a constitutional defect." 25 Cal.4th at 606, 106 Cal.Rptr.2d 575, 22 P.3d 347. Similarly, Justice Clarence Thomas, concurring in the Supreme Court's denial of certiorari in *Thompson v. McNeil*, argued that "[i]t makes 'a mockery of our system of justice ... for a convicted murderer, who, through his own interminable efforts of delay ... has secured the almost-indefinite

however, show that at least as to California's administration of its death penalty system, such assumptions are simply incorrect.

The Court pauses first to note the arguments that the State is not making in opposition to Mr. Jones's claim. The State is not arguing that the delay in Mr. Jones's execution is an isolated incident in a system that otherwise operates as expeditiously as possible to execute those sentenced to death.[19] Nor does the State argue that it is rational or necessary for it to take more than two decades to provide Death Row inmates with the process required to ensure that their death sentence comports with constitutional requirements. Indeed, the State cannot reasonably make these arguments.

On the record before it, the Court finds that much of the delay in California's postconviction review process is created by the State itself, not by inmates' own interminable efforts to delay.[20] Most Death Row inmates wait between three and five years for counsel to be appointed for their direct appeal. After the issues are briefed on direct appeal, another two to three years are spent waiting for oral argument to be scheduled before the California Supreme Court. On state habeas review, far from meeting the ideal goal of appointing state habeas counsel shortly after the death verdict, at least eight to ten years elapse between the death verdict and appointment of habeas counsel. When that counsel is appointed by the State, investigation of potential claims is hampered by underfunding, which in turn slows down the federal habeas review process. Then, after state habeas briefs are submitted, another four years elapse before the California Supreme Court issues a generally conclusory denial of the inmate's claims. This lack of a reasoned opinion further slows adjudication of inmates' federal habeas claims. Finally, even after filing a petition for federal habeas review, many inmates, often because of deficiencies rooted in the State's process, must stay their federal cases to exhaust claims in state court.

These delays—exceeding 25 years on average—are inherent to California's dysfunctional death penalty system, not the result of individual inmates' delay tactics, except perhaps in isolated cases. *See generally* Appendix A (showing that very few of California's Death Row inmates have completed the state and federal post-conviction review process, even 20 years after being sentenced to death). That such delays are not reasonably necessary to the fair administration of justice is evident.

postponement of his sentence, to then claim that the almost-indefinite postponement renders his sentence unconstitutional.'" 556 U.S. 1114, 129 S.Ct. 1299, 1301, — L.Ed.2d —— (2009) (Thomas, J., concurring in the denial of certiorari) (quoting *Turner v. Jabe*, 58 F.3d 924, 933 (4th Cir.1995) (Luttig, J., concurring in judgment)).

19. Unlike Mr. Jones's claim here, in previous instances where federal courts have been presented claims of unconstitutional delay preceding execution, they have generally appeared in the context of claims brought by inmates in whose *individual* cases the delay was extraordinary. *See, e.g., Lackey v. Texas*, 514 U.S. 1045, 115 S.Ct. 1421, 131 L.Ed.2d

304 (1995) (17 years of delay); *Smith v. Mahoney*, 611 F.3d 978 (9th Cir.2010) (25 years of delay). In those cases, however, the petitioner did not argue, as does Mr. Jones here, that his execution would be arbitrary and serve no penological purpose because of system-wide dysfunction in the post-conviction review process.

20. Indeed, in Mr. Jones's case, there is no evidence of frivolous filings or unreasonable delay caused by Mr. Jones. Rather, the unnecessary delay in his case—as in the cases of most other Death Row inmates—is attributable to structural problems inherent in California's death penalty system.

In 2008, the Commission recommended a series of related reforms that, in its view, would help alleviate delay inherent in California's death penalty system. The Commission's recommendations included more adequately funding the system and removing the requirement that death penalty appeals must be automatically heard by the California Supreme Court rather than the state's intermediate courts of appeal. *See* Commission Report at 124. Through its proposed reforms, the Commission estimated that the delay between sentencing and execution of a Death Row inmate could be reduced to between 11 and 14 years.[21] *See id.* So reducing California's time to execution would bring California closer to, or even below, the national average, which between 2000 and 2012 was approximately 12.5 years, and in 2012 was 15.8 years.[22]

The Commission's proposal, and the experience of other states across the country—which, on average, take substantially less than 20 years, let alone 25 or 30 years, to adjudicate their post-conviction review process—demonstrate that the inordinate delay in California's death penalty system is not reasonably necessary to protect an inmate's rights. Moreover, there is no basis to conclude that inmates on California's Death Row are simply more dilatory, or have stronger incentives to needlessly delay the capital appeals process, than are those Death Row inmates in other states. Most of the delay in California's post-conviction process then is attributable to California's own system, not the inmates themselves.

Of course, the Court's conclusion should not be understood to suggest that the post-conviction review process should be curtailed in favor of speed over accuracy. Indeed, it bears noting that in more than half of all cases in which the federal courts have reviewed a California inmate's death sentence on habeas review, the inmate has been granted relief from the death sentence. *See* Appendix A. The post-conviction review process is, therefore, vitally important. It serves both the inmate's interest in not being improperly executed, as well as the State's interest in ensuring that it does not improperly execute any individual. Nevertheless, the Court holds that where the State permits the post-conviction review process to become so inordinately and unnecessarily delayed that only an arbitrarily selected few of those sentenced to death are executed, the State's process violates the Eight Amendment. Fundamental principles of due process and just punishment demand that any punishment, let alone the ultimate one of execution, be timely and rationally carried out.

## D. Procedural Bars to Federal Collateral Review

The State argues that Mr. Jones's claim is procedurally barred. Specifically, the State contends that Mr. Jones has not exhausted available state remedies as required under the Anti–Terrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254(b). Federal courts generally may not grant habeas relief to an individual in state custody unless that individual has first exhausted the remedies

---

**21.** Whether the State adopts the Commission's proposed reforms, or any others, is a policy question beyond the scope of this proceeding. But the proposals are relevant to supporting Mr. Jones's claim that the delay in California is of a structural and systemic nature, and are cited here for that purpose.

**22.** United States Dep't of Justice, Bureau of Justice Statistics, NCJ 245789, Capital Punishment, 2012c—Statistical Tables (May 2014) at 14, *available at* http://www.bjs.gov/content/pub/pdf/cp12st.pdf.

available in state court. *See* 28 U.S.C. § 2254(b)(1)(A). However, where "circumstances exist that render [the state] process ineffective to protect the rights of the applicant," exhaustion is not required. 28 U.S.C. § 2254(b)(1)(B)(ii). The Court has determined that systemic delay caused by the dysfunctional state review process has resulted in the arbitrary selection of a small handful of individuals for execution, and has therefore rendered Mr. Jones's death sentence unconstitutional. Requiring Mr. Jones to return to the California Supreme Court to exhaust his claim would only compound the delay that has already plagued his post-conviction review process. *See* Laurence Decl. ¶ 16 (noting that, on average, 3. 19 years elapse before an exhaustion petition in a capital habeas case is decided by the California Supreme Court). More importantly, it would require Mr. Jones to have his claim resolved by the very system he has established is dysfunctional and incapable of protecting his constitutional rights. Special circumstances clearly exist such that Mr. Jones need not return to the California Supreme Court to exhaust his claim. *Cf. Phillips v. Vasquez*, 56 F.3d 1030, 1035 (9th Cir.1995) ("[E]xtraordinary delay in the state courts can render state corrective processes 'ineffective' within the meaning of section 2254(b) [such] that exhaustion is not required....") (citation omitted); *Jones v. Tubman*, 360 F.Supp. 1298, 1300 (S.D.N.Y.1973) ("[E]xhaustion is not mandated where the state consideration would be either futile or where state procedures do not provide swift review of petitioner's claims.").

While not specifically addressed by the State, the Court considers a second procedural defense commonly raised to avoid federal habeas review: that the petitioner's claim seeks the announcement of a new rule on collateral review and is therefore barred under *Teague v. Lane*, 489 U.S. 288, 306, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).[23] The rule Mr. Jones seeks to have applied here—that a state may not arbitrarily inflict the death penalty—is not new. Rather, it is inherent in the most basic notions of due process and fair punishment embedded in the core of the Eighth Amendment. *See Furman*, 408 U.S. at 274–77, 92 S.Ct. 2726 (Brennan, J., concurring) (describing the principle that "the State must not arbitrarily inflict a severe punishment" as "inherent in the [Cruel and Unusual Punishment] Clause" and tracing its application in Anglo–American jurisprudence); *see also id.* at 242, 92 S.Ct. 2726 (Douglas, J., concurring) ("There is evidence that the provision of the English Bill of Rights of 1689, from which the language of the Eighth Amendment was taken, was concerned primarily with selective or irregular application of harsh penalties and that its aim was to forbid arbitrary and discriminatory penalties of a severe nature."). This rule is certainly one "so deeply embedded in the fabric of due process that everyone takes it for granted." *Dyer v. Calderon*, 151 F.3d 970, 984 (9th Cir.1998) (en banc). It is therefore not a new rule for *Teague* purposes. *See id.* ("[A] rule needs to be announced for purposes of *Teague* only if it's new.").

\* \* \*

When an individual is condemned to death in California, the sentence carries with it an implicit promise from the State that it will actually be carried out. That promise is made to the citizens of the

---

**23.** Because there is no underlying state court ruling on the merits of Mr. Jones's claim of arbitrariness in California's death penalty system, the Court does not consider the claim under AEDPA's deferential standard of review. *See* 28 U.S.C. § 2254(d).

State, who are investing significant resources in furtherance of a punishment that they believe is necessary to achieving justice. It is made to jurors who, in exercise of their civic responsibility, are asked to hear about and see evidence of undeniably horrific crimes, and then participate in the agonizing deliberations over whether the perpetrators of those horrific crimes should be put to death. It is made to victims and their loved ones, for whom just punishment might provide some semblance of moral and emotional closure from an otherwise unimaginable loss. And it is made to the hundreds of individuals on Death Row, as a statement their crimes are so heinous they have forfeited their right to life.

But for too long now, the promise has been an empty one. Inordinate and unpredictable delay has resulted in a death penalty system in which very few of the hundreds of individuals sentenced to death have been, or even will be, executed by the State. It has resulted in a system in which arbitrary factors, rather than legitimate ones like the nature of the crime or the date of the death sentence, determine whether an individual will actually be executed. And it has resulted in a system that serves no penological purpose. Such a system is unconstitutional. Accordingly,

the Court hereby VACATES Mr. Jones's death sentence.

## Appendix A: Death Sentences in California, 1978–1997 [1]

*Between 1978 and 1997, 591 new death judgments were imposed by the State of California. This chart describes the current case status of the 511 individuals sentenced in that time period whose death sentences have not been overturned by the California Supreme Court (unless subsequently reinstated) and whose postconviction proceedings have not been stayed based on their lack of mental competency to face the death penalty.[2] Of these 511 individuals, 13 were executed by the State (Red), 17 had relief denied by the federal courts but have had their executions stayed (Pink), 39 were granted relief from their death sentences by the federal courts and have not been resentenced to death[3] (Blue), 79 died on Death Row from causes other than execution by the State of California (Orange), 169 are currently having their habeas petitions evaluated by federal district courts (Green) or the Ninth Circuit Court of Appeals (Purple), and 194 are still having their appeals reviewed by the California Supreme Court, either on direct or collateral review (Yellow). The chart is current to June 2014.[4]*

1. The chart does not describe the case status of an individual sentenced after 1997 because for all but a small handful of those individuals, state proceedings are still ongoing, and none have completed the federal habeas process. In total, 397 of the 748 inmates currently on California's Death Row were sentenced to death between 1978 and 1997. *See* CDCR Condemned Inmate List; CDCR Summary at 2.

2. Because most of the death sentences overturned by the California Supreme Court were overturned in the period between 1979 and 1986, inclusion of these sentences in Appendix A would not accurately reflect the current state of affairs in California's death penalty system. *See* Commission Report at 120 n. 21

(noting that between 1979 and 1986, the California Supreme Court reversed 59 of 64 death judgments it reviewed, but that since that time, it has reversed death judgments less than 10 percent of the time).

3. Despite having been granted relief by the federal courts, 10 of these 39 individuals are listed by the CDCR as being among the 748 inmates currently on Death Row. *See* CDCR Condemned Inmate List. In at least some of these cases, this fact may be explained by the State's intention to again seek the death penalty against these inmates in a new trial.

4. The chart was compiled using publicly available information from the court dockets

| Name | Date Sentenced[5] | Federal Case Number | Federal Judicial District | Date Federal Habeas Proceedings Initiated[6] | Current Case Status | Years Since Sentenced |
|---|---|---|---|---|---|---|
| Lavell Frierson | 8/14/1978 | 92-06251 DDP | Central | 10/19/1992 | Relief Granted (2007) | -- |
| Doug Stankewitz | 10/12/1978 | 91-00616 AWI | Eastern | 11/15/1991 | Relief Granted (2012) | -- |
| Ronald Bell | 3/2/1979 | 99-20615 RMW | Northern | 4/12/1991 | CD Cal Petition Pending | 35 |
| Robert Harris | 3/9/1979 | 90-00380 E | Southern | 3/26/1990 | Executed (1992) | -- |
| Earl Jackson | 3/19/1979 | 95-03286 ER | Central | 5/17/1995 | Relief Granted (2008) / Resentenced to Death (2010) / State Proceedings Pending | 35 |
| Keith Williams | 4/13/1979 | 89-00160 REC | Eastern | 2/22/1989 | Executed (1996) | -- |
| David Murtishaw | 4/27/1979 | 91-00508 OWW | Eastern | 9/10/1991 | Relief Granted (2001) / Resentenced to Death / Deceased (2011) | -- |
| Robert Massie | 5/25/1979 | 99-02861 CAL | Northern | 6/14/1999 | Executed (2001) | -- |
| Richard Chase | 6/8/1979 | | | | Deceased (1980) | -- |
| Stevie Fields | 8/29/1979 | 92-00465 AHM | Central | 1/23/1992 | Relief Denied (2007) / Execution Stayed | 35 |
| David Ghent | 10/30/1979 | 90-02763 RMW | Northern | 9/26/1990 | Relief Granted (2002) | -- |
| Richard Montiel | 11/20/1979 | 96-05412 LJO | Eastern | 4/22/1996 | ED Cal Petition Pending | 35 |
| James Anderson | 11/30/1979 | 03-07948 JLS | Central | 11/4/2003 | CD Cal Petition Pending | 35 |
| Steven Ainsworth | 1/30/1980 | 90-00329 LKK | Eastern | 3/16/1990 | Relief Granted (2001) | -- |
| Richard Phillips | 2/20/1980 | 92-05167 AWI | Eastern | 3/4/1992 | Relief Granted (2012) | -- |
| Alejandro Ruiz | 2/21/1980 | 89-04126 FMC | Central | 7/11/1989 | Deceased (2007) | -- |
| Fermin Ledesma | 3/14/1980 | 07-02130 PJH | Northern | 4/17/2007 | State Proceedings Pending | 34 |

of the four federal judicial districts in California, the public docket of the California Supreme Court, and the CDCR's Condemned Inmate List (July 2014) and List of Inmates Who Have Died Since 1978 (2014).

| Name | Date | Case No. | District | Date | Status | No. |
|---|---|---|---|---|---|---|
| David Moore | 4/30/1980 | | | | Deceased (1980) | -- |
| Melvin Turner | 8/20/1980 | 96-02844 DOC | Central | 4/22/1996 | State Proceedings Pending | 34 |
| Marvin Walker | 9/8/1980 | 94-01997 PJH | Northern | 6/7/1994 | ND Cal Petition Pending | 34 |
| Donald Griffin | 12/3/1980 | | | | State Proceedings Pending | 34 |
| Darrell Rich | 1/23/1981 | 89-00823 EJG | Eastern | 6/12/1989 | Executed (2000) | -- |
| Jerry Bunyard | 2/2/1981 | | | | State Proceedings Pending | 33 |
| Bernard Hamilton | 3/2/1981 | 92-00474 B | Southern | 3/31/1992 | Relief Granted (1994) / Resentenced to Death (1996) / State Proceedings Pending | 33 |
| Lawrence Bittaker | 3/22/1981 | 91-01643 TJH | Central | 3/27/1991 | CD Cal Petition Pending | 33 |
| Harvey Heishman | 3/30/1981 | 90-01815 VRW | Northern | 6/26/1990 | Relief Denied (2010) / Execution Stayed | 33 |
| Eric Kimble | 4/6/1981 | 90-04826 SVW | Central | 9/7/1990 | CD Cal Petition Pending | 33 |
| Stanley Williams | 4/15/1981 | 89-00327 SVW | Central | 1/18/1989 | Executed (2006) | -- |
| Robert McLain | 5/12/1981 | 89-03061 JGD | Central | 5/18/1989 | Relief Granted (1998) | -- |
| Joe Johnson | 5/28/1981 | | | | State Proceedings Pending | 33 |
| Anthony Bean | 7/20/1981 | 90-00648 WBS | Eastern | 5/18/1990 | Relief Granted (1998) | -- |
| Stephen Anderson | 7/24/1981 | 92-00488 JGD | Central | 1/24/1992 | Executed (2002) | -- |
| Oscar Gates | 8/7/1981 | 88-02779 WHA | Northern | 7/14/1988 | ND Cal Petition Pending | 33 |
| Michael Burgener | 9/4/1981 | 10-03399 GHK | Central | 5/6/2010 | State Proceedings Pending | 33 |
| Ronald Hawkins | 9/20/1981 | | | | Deceased (1983) | -- |
| Billy Ray Hamilton | 10/16/1981 | 89-03758 THE | Northern | 10/4/1989 | Deceased (2007) | -- |
| John Davenport | 11/4/1981 | 96-06883 DSF | Central | 9/30/1996 | State Proceedings Pending | 33 |
| Russell Coleman | 11/20/1981 | 89-01906 RMW | Northern | 6/2/1989 | Relief Granted (2000) | -- |
| Edgar Hendricks | 12/4/1981 | 89-02901 EFL | Northern | 8/7/1989 | Relief Granted (1995) | -- |
| Gary Guzman | 12/22/1981 | | | | Deceased (1991) | -- |
| Fernando Caro | 1/5/1982 | 93-04159 JW | Northern | 11/23/1993 | Relief Granted (2002) | -- |
| Bluford Hayes Jr. | 1/22/1982 | 92-00603 DFL | Eastern | 4/14/1992 | Relief Granted (2005) | -- |
| Phillip Lucero | 1/26/1982 | 01-02823 VAP | Central | 3/27/2001 | CD Cal Petition Pending | 32 |
| Richard Hovey | 2/10/1982 | 89-01430 MHP | Northern | 4/26/1989 | Relief Granted (2006) | -- |
| Carlos Avena | 2/12/1982 | 96-08034 GHK | Central | 11/15/1996 | Circuit Appeal Pending | 32 |
| Albert Brown | 2/22/1982 | 94-08150 ABC | Central | 12/5/1994 | Relief Denied (2008) / Execution Stayed | 32 |
| Willie Branner | 2/26/1982 | 90-03219 DLJ | Northern | 11/9/1990 | ND Cal Petition Pending | 32 |
| Rondald Sanders | 3/3/1982 | 92-05471 LJO | Eastern | 7/13/1992 | ED Cal Petition Pending | 32 |
| William Payton | 3/5/1982 | 94-04779 R | Central | 7/18/1994 | Relief Denied (2011) / Execution Stayed | 32 |

| Name | Date | Case Number | District | Date | Status | |
|---|---|---|---|---|---|---|
| William Bonin | 3/12/1982 | 91-00693 ER | Central | 2/7/1991 | Executed (1996) | -- |
| Benjamin Silva | 3/15/1982 | 90-03311 DT | Central | 6/26/1990 | Relief Granted (2005) | -- |
| Darnell Lucky | 4/7/1982 | 91-00583 TJH | Central | 2/1/1991 | CD Cal Petition Pending | 32 |
| Richard Boyde | 4/20/1982 | 91-02522 GPS | Central | 5/9/1991 | Relief Granted (2008) | -- |
| Melvin-Wade | 5/21/1982 | 89-00173 R | Central | | Relief Granted (1994) | -- |
| George Carpenter | 5/21/1982 | | | | Deceased (1984) | -- |
| Gary Howard | 5/27/1982 | 88-07240 WJR | Central | 12/8/1988 | Relief Granted (1996) | -- |
| Richard Grant | 5/28/1982 | 90-00779 JAM | Eastern | 6/18/1990 | Relief Granted (2010) | -- |
| John Brown | 6/15/1982 | 90-02815 AHS | Central | 6/1/1990 | CD Cal Petition Pending | 32 |
| Manuel Babbitt | 7/8/1982 | 89-01407 WBS | Eastern | 8/1/1989 | Executed (1999) | -- |
| Mose Willis | 7/26/1982 | | | | Deceased (1988) | -- |
| Prentice Snow | 8/31/1982 | | | | State Proceedings Pending | 32 |
| Adam Miranda | 9/17/1982 | 89-07130 JLS | Central | 12/11/1989 | State Proceedings Pending | 32 |
| James Karis | 9/17/1982 | 89-00527 LKK | Eastern | 4/13/1989 | Relief Granted (1998) / Resentenced to Death / Deceased (2013) | -- |
| Brett Pensinger | 9/20/1982 | 92-01928 DSF | Central | 3/30/1992 | Circuit Appeal Pending | 32 |
| Fernando Belmontes | 10/6/1982 | 89-00736 JAM | Eastern | 5/25/1989 | Relief Denied (2010) / Execution Stayed | 32 |
| Bronte Wright | 10/29/1982 | 92-06918 AHM | Central | 11/20/1992 | Deceased (2000) | -- |
| Ronald Deere | 11/10/1982 | 92-01684 CAS | Central | 3/18/1992 | Circuit Appeal Pending (Relief Denied / Certiorari Pending) | 32 |
| Joseph Poggi | 11/12/1982 | | | | Deceased (1990) | -- |
| Clarence Allen | 11/22/1982 | 88-01123 FCD | Eastern | 8/31/1988 | Executed (2006) | -- |
| Ricardo Sanders | 12/3/1982 | 96-07429 JFW | Central | 10/22/1996 | Circuit Appeal Pending | 32 |
| Craig Ross | 12/10/1982 | 96-02720 SVW | Central | 4/16/1996 | CD Cal Petition Pending | 32 |
| Steven Champion | 12/10/1982 | 96-02845 SVW | Central | 4/22/1996 | State Proceedings Pending | 32 |
| Michael Hamilton | 12/17/1982 | 90-00363 OWW | Eastern | 6/12/1990 | Relief Granted (2009) | -- |
| Maurice Keenan | 1/21/1983 | 89-02167 DLJ | Northern | 6/22/1989 | Relief Granted (2001) | -- |
| Ronald Fuller | 2/3/1983 | | | | Deceased (1989) | -- |
| Douglas Clark | 3/16/1983 | 92-06567 PA | Central | 11/3/1992 | CD Cal Petition Pending | 31 |
| James Melton | 3/18/1983 | 89-04182 RMT | Central | 7/13/1989 | Relief Granted (2007) | -- |
| Michael Williams | 4/1/1983 | 90-01212 R | Southern | 8/31/1990 | Relief Granted (1993) | -- |
| Jaturun Siripongs | 4/22/1983 | 89-06530 WDK | Central | 11/9/1989 | Executed (1999) | -- |
| Malcolm Robbins | 5/12/1983 | 91-04748 TJH | Central | 9/4/1991 | CD Cal Petition Pending | 31 |

| Name | Date | Case Number | District | Date | Status | No. |
|---|---|---|---|---|---|---|
| Larry Roberts | 5/27/1983 | 93-00254 TLN | Eastern | 2/18/1993 | ED Cal Petition Pending | 31 |
| Larry Webster | 6/9/1983 | 93-00306 LKK | Eastern | 2/25/1993 | ED Cal Petition Pending | 31 |
| Michael Morales | 6/14/1983 | 91-00682 DT | Central | 2/6/1991 | Relief Denied (2005) / Execution Stayed | 31 |
| Kevin Malone | 6/14/1983 | 96-04040 WJR | Central | 6/7/1996 | Executed by Missouri (1999) | -- |
| Gerald Gallego | 6/21/1983 | 92-00653 SBA | Northern | 2/4/1992 | Deceased (2002) | -- |
| William Proctor | 6/28/1983 | 96-01401 JAM | Eastern | 7/31/1996 | ED Cal Petition Pending | 31 |
| George Marshall | 6/28/1983 | 97-05493 AWI | Eastern | 5/12/1997 | Deceased (2001) | -- |
| Martin Gonzalez | 7/8/1983 | | | | Deceased (1990) | -- |
| Keith Adcox | 7/11/1983 | 92-05830 LJO | Eastern | 12/1/1992 | State Proceedings Pending | 31 |
| Francis Hernandez | 7/12/1983 | 90-04638 RSWL | Central | 8/28/1990 | Circuit Appeal Pending | 31 |
| Albert Howard | 8/3/1983 | 93-05726 LJO | Eastern | 10/25/1993 | Deceased (2009) | -- |
| James Odle | 8/12/1983 | 88-04280 MMC | Northern | 10/25/1988 | Relief Granted (2001) | -- |
| Douglas Mickey | 9/23/1983 | 93-00243 RMW | Northern | 1/22/1993 | Relief Denied (2010) / Execution Stayed | 31 |
| Alfred Dyer | 9/26/1983 | 93-02823 VRW | Northern | 7/29/1993 | Relief Granted (1998) | -- |
| Demetrie Mayfield | 9/30/1983 | 94-06011 ER | Central | 9/2/1994 | Relief Granted (2001) | -- |
| Constantino Carrera | 10/7/1983 | 90-00478 AWI | Eastern | 7/31/1990 | Relief Granted (2008) | -- |
| John Visciotti | 10/21/1983 | 97-04591 R | Central | 6/23/1997 | Circuit Appeal Pending | 31 |
| Donald Miller | 11/10/1983 | 91-02652 NM | Central | 5/16/1991 | Deceased (2005) | -- |
| Robert Thompson | 12/6/1983 | 90-06605 CBM | Central | 12/5/1990 | Deceased (2006) | -- |
| David Mason | 1/27/1984 | | Eastern | | Executed (1993) | -- |
| Jackson Daniels | 1/31/1984 | 92-04683 JSL | Central | 8/5/1992 | Relief Granted (2006) / Resentenced to Death (2010) / State Proceedings Pending | 30 |
| Mark Reilly | 2/1/1984 | 93-07055 JAK | Central | 11/22/1993 | CD Cal Petition Pending | 30 |
| Andrew Robertson | 2/3/1984 | 90-04850 CBM | Central | 9/10/1990 | Deceased (1998) | -- |
| Gerald Stanley | 2/7/1984 | 95-01500 JAM | Eastern | 8/17/1995 | ED Cal Petition Pending | 30 |
| Donald Beardslee | 3/13/1984 | 92-03990 SBA | Northern | 10/1/1992 | Executed (2005) | -- |
| Michael Jennings | 3/27/1984 | 89-01360 JW | Northern | 3/19/1989 | Relief Granted (2003) | -- |
| Michael Hunter | 3/28/1984 | 90-03275 JW | Northern | 11/13/1990 | Relief Granted (2001) | -- |
| Charles Moore | 5/16/1984 | 91-05976 KN | Central | 11/1/1991 | Relief Granted (1997) / Resentenced to Death (1998) / State Proceedings Pending | 30 |
| Michael Jackson | 5/21/1984 | 91-04249 R | Central | 8/8/1991 | Relief Granted (2001) / Resentenced to Death (2002) / State Proceedings Pending | 30 |

| Scott Pinholster | 6/4/1984 | 95-06240 GLT | Central | 9/19/1995 | Relief Denied (2011) / Execution Stayed | 30 |
|---|---|---|---|---|---|---|
| Jesse Andrews | 6/8/1984 | 02-08969 R | Central | 11/21/2002 | Circuit Appeal Pending | 30 |
| Robert Diaz | 6/15/1984 | 93-06309 TJH | Central | 10/19/1993 | Deceased (2010) | -- |
| Stephan Mitcham | 7/6/1984 | 97-03825 LHK | Northern | 8/10/1994 | ND Cal Petition Pending | 30 |
| Robert Bloom | 7/23/1984 | 90-02581 | Central | 5/22/1990 | Relief Granted (1997) / Resentenced to Death (2001) / State Proceedings Pending | 30 |
| Jay Kaurish | 7/27/1984 | 92-01623 DT | Central | 3/16/1992 | Deceased (1992) | -- |
| William Kirkpatrick | 8/14/1984 | 96-00351 WDK | Central | 1/18/1996 | Circuit Appeal Pending | 30 |
| Thomas Thompson | 8/17/1984 | 89-03630 DT | Central | 6/15/1989 | Executed (1998) | -- |
| Watson Allison | 10/2/1984 | 92-06404 CAS | Central | 10/26/1992 | Relief Granted (2010) | -- |
| Charles McDowell | 10/23/1984 | 90-04009 MRP | Central | 7/30/1990 | Relief Granted (1998) / Resentenced to Death (1999) / State Proceedings Pending | 30 |
| Robert Lewis | 11/1/1984 | | | | State Proceedings Pending | 30 |
| David Carpenter | 11/16/1984 | 98-02444 MMC | Northern | 6/19/1998 | ND Cal Petition Pending | 30 |
| Kenneth Lang | 12/5/1984 | 91-04061 MMM | Central | 7/29/1991 | CD Cal Petition Pending | 30 |
| Richard Boyer | 12/14/1984 | 06-07584 GAF | Central | 11/29/2006 | Circuit Appeal Pending | 30 |
| Thaddaeus Turner | 12/21/1984 | 91-00153 LJO | Eastern | 4/1/1991 | Relief Granted (2009) | -- |
| William Clark | 2/1/1985 | 95-00334 DOC | Central | 1/18/1995 | Relief Granted (2006) | -- |
| Earl Jones | 2/22/1985 | 94-00816 TJH | Central | 2/7/1994 | Deceased (2006) | -- |
| Ward Weaver | 4/4/1985 | 02-05583 AWI | Eastern | 5/17/2002 | ED Cal Petition Pending | 29 |
| Fred Douglas | 4/5/1985 | 91-03055 RSWL | Central | 6/6/1991 | Relief Granted (2003) | -- |
| Patrick Gordon | 5/3/1985 | 91-00882 LKK | Eastern | 7/5/1991 | ED Cal Petition Pending | 29 |
| Kevin Cooper | 5/15/1985 | 92-00427 H | Southern | 3/24/1992 | Relief Denied (2009) / Execution Stayed | 29 |
| Charles Whitt | 5/23/1985 | 94-07960 WJR | Central | 11/23/1994 | Deceased (2004) | -- |
| Andre Burton | 6/4/1985 | 91-01652 AHM | Central | 3/27/1991 | Circuit Appeal Pending | 29 |
| Brian Mincey | 6/14/1985 | 93-02554 PSG | Central | 5/3/1993 | CD Cal Petition Pending | 29 |
| Randy Haskett | 6/28/1985 | 92-06192 GAF | Central | 10/15/1992 | Relief Granted (2009) | -- |
| Duane Holloway | 7/8/1985 | 05-02089 KJM | Eastern | 10/19/2005 | ED Cal Petition Pending | 29 |
| Robert Stansbury | 7/15/1985 | 95-08532 WMB | Central | 12/11/1995 | Deceased (2003) | -- |
| Richard Ramierz | 8/8/1985 | 91-03802 CBM | Central | 7/15/1998 | Relief Granted (2009) | -- |
| Raynard Cummings | 9/20/1985 | 95-07118 CBM | Central | 10/20/1995 | Circuit Appeal Pending | 29 |
| Kenneth Gay | 9/20/1985 | 01-05368 GAF | Central | 6/18/2001 | State Proceedings Pending | 29 |

| Name | Date | Case Number | District | Date | Status | No. |
|---|---|---|---|---|---|---|
| Michael Cox | 11/26/1985 | 04-00065 MCE | Eastern | 1/5/2004 | ED Cal Petition Pending | 29 |
| Jeffrey Sheldon | 12/19/1985 | 96-05545 TJH | Central | 8/13/1996 | CD Cal Petition Pending | 29 |
| Stephen DeSantis | 2/3/1986 | 93-01083 FCD | Eastern | 7/1/1993 | Deceased (2002) | -- |
| Michael Mattson | 2/7/1986 | 91-05453 FMC | Central | 10/8/1991 | Deceased (2009) | -- |
| Anderson Hawthorne | 2/18/1986 | 95-07709 CBM | Central | 11/13/1995 | State Proceedings Pending | 28 |
| Denny Mickle | 4/17/1986 | 92-02951 THE | Northern | 7/30/1992 | ND Cal Petition Pending | 28 |
| Tiequon Cox | 4/30/1986 | 92-03370 CBM | Central | 6/4/1992 | Relief Denied (2011) / Execution Stayed | 28 |
| Henry Duncan | 5/5/1986 | 92-01403 AHS | Central | 3/4/1992 | Relief Granted (2008) | -- |
| Ronald McPeters | 5/7/1986 | 95-05108 LJO | Eastern | 2/13/1995 | ED Cal Petition Pending | 28 |
| Chay'im Ben-Sholom | 5/9/1986 | 93-05531 AWI | Eastern | 8/10/1993 | Relief Granted (2012) | -- |
| Freddie Taylor | 5/30/1986 | 92-01627 EMC | Northern | 4/30/1992 | ND Cal Petition Pending | 28 |
| Ralph Thomas | 6/4/1986 | 93-00616 MHP | Northern | 2/18/1993 | Relief Granted (2013) | -- |
| Horace Kelly | 6/25/1986 | 93-02951 TJH | Central | 5/21/1993 | CD Cal Petition Pending | 28 |
| Curtis Price | 7/10/1986 | 93-00277 PJH | Northern | 1/25/1993 | ND Cal Petition Pending | 28 |
| Barry Williams | 7/11/1986 | 00-10637 DOC | Central | 10/4/2000 | CD Cal Petition Pending | 28 |
| Anthony Sully | 7/15/1986 | 92-00829 WHA | Northern | 2/21/1992 | Relief Denied (2013) / Execution Stayed | 28 |
| Troy Ashmus | 7/25/1986 | 93-00594 THE | Northern | 2/17/1993 | ND Cal Petition Pending | 28 |
| Royal Hayes | 8/8/1986 | 01-03926 MHP | Northern | 10/18/2001 | Relief Denied (2011) / Execution Stayed | 28 |
| Mauricio Silva | 8/11/1986 | | | | State Proceedings Pending | 28 |
| Rodney Alcala | 8/20/1986 | 94-1424 SVW | Central | 3/4/1994 | Relief Granted (2003) / Resentenced to Death (2010) / State Proceedings Pending | 28 |
| Antonio Espinoza | 9/17/1986 | 94-01665 LKK | Eastern | 10/13/1994 | ED Cal Petition Pending | 28 |
| Wilbur Jennings | 11/12/1986 | 91-00684 AWI | Eastern | 12/16/1991 | Deceased (2014) | -- |
| Robert Danielson | 11/13/1986 | 95-02378 SI | Northern | 7/8/1994 | Deceased (1995) | -- |
| Thomas Edwards | 12/11/1986 | 93-07151 CJC | Central | 11/26/1993 | Relief Denied (2009) / Deceased (2009) | -- |
| Theodore Frank | 2/23/1987 | 91-06287 AHS | Central | 11/18/1991 | Deceased (2001) | -- |
| Teofilio Medina | 2/25/1987 | 94-01892 RSWL | Central | 3/25/1994 | Circuit Appeal Pending | 27 |
| Christopher Day | 3/3/1987 | | | | Deceased (1994) | -- |
| David Breaux | 3/12/1987 | 93-00570 JAM | Eastern | 4/6/1993 | ED Cal Petition Pending | 27 |
| Conrad Zapien | 3/23/1987 | 94-01455 WDK | Central | 3/7/1994 | Circuit Appeal Pending | 27 |
| Richard Benson | 4/30/1987 | 94-05363 AHM | Central | 8/8/1994 | Circuit Appeal Pending | 27 |

| Name | Date | Case Number | District | Date | Status | |
|---|---|---|---|---|---|---|
| Robert Nicolaus | 6/23/1987 | 95-02335 MMC | Northern | 9/17/1992 | Deceased (2003) | -- |
| Alfred Sandoval | 6/30/1987 | 94-08206 R | Central | 12/7/1994 | Relief Granted (2001) | -- |
| Steven Livaditis | 7/8/1987 | 96-02833 SVW | Central | 4/22/1996 | CD Cal Petition Pending | 27 |
| Harold Memro (Reno) | 7/17/1987 | 96-02768 CBM | Central | 4/18/1996 | CD Cal Petition Pending | 27 |
| George Wharton | 7/22/1987 | 92-03469 CJC | Central | 6/9/1992 | Circuit Appeal Pending | 27 |
| Robert Garceau | 7/30/1987 | 95-05363 OWW | Eastern | 5/12/1995 | Deceased (2004) | -- |
| Willie Johnson | 8/5/1987 | 98-04043 SI | Northern | 10/21/1998 | ND Cal Petition Pending | 27 |
| Timothy Pride | 8/6/1987 | 93-00926 GEB | Eastern | 6/9/1993 | Deceased (1994) | -- |
| Bruce Morris | 8/27/1987 | 92-00483 EJH | Eastern | 3/27/1992 | Relief Granted (2007) | -- |
| Jeffrey Wash | 9/1/1987 | 95-01133 CAL | Northern | 4/3/1995 | Deceased (1996) | -- |
| Donrell Thomas | 9/10/1987 | | | | Deceased (1992) | -- |
| Mitchell Sims | 9/11/1987 | 95-05267 GHK | Central | 8/8/1995 | Relief Denied (2006) / Execution Stayed | 27 |
| Martin Kipp | 9/18/1987 | 99-04973 ABC | Central | 5/10/1999 | CD Cal Petition Pending | 27 |
| Paul Tuilaepa | 9/25/1987 | 95-04619 DDP | Central | 7/13/1995 | CD Cal Petition Pending | 27 |
| Fred Freeman | 10/7/1987 | 99-20614 JW | Northern | 9/22/1995 | Deceased (2009) | -- |
| Kenneth Clair | 12/4/1987 | 93-01133 CAS | Central | 2/26/1993 | Circuit Appeal Pending | 27 |
| Keith Fudge | 12/11/1987 | 95-05369 RGK | Central | 8/11/1995 | CD Cal Petition Pending | 27 |
| Richard Clark | 12/18/1987 | 97-20618 WHA | Northern | 8/5/1994 | Circuit Appeal Pending | 27 |
| Michael Wader | 1/5/1988 | 96-05482 HLH | Central | 8/9/1996 | Deceased (1997) | -- |
| Michael Hill | 1/21/1988 | 94-00641 CW | Northern | 2/24/1994 | ND Cal Petition Pending | 26 |
| William Noguera | 1/29/1988 | 94-06417 CAS | Central | 9/23/1994 | CD Cal Petition Pending | 26 |
| Horace Kelly | 3/24/1988 | 98-02722 TJH | Central | 4/6/1998 | CD Cal Petition Pending | 26 |
| Laverne Johnson | 4/1/1988 | 95-00305 THE | Northern | 1/26/1995 | ND Cal Petition Pending | 26 |
| Lance Osband | 4/8/1988 | 97-00152 KJM | Eastern | 1/30/1997 | ED Cal Petition Pending | 26 |
| Marcelino Ramos | 4/27/1988 | 98-02037 AHS | Central | 3/20/1988 | Deceased (2007) | -- |
| David Rogers | 5/2/1988 | | | | State Proceedings Pending | 26 |
| Dennis Brewer (Mayfield) | 5/4/1988 | 97-03742 FMO | Central | 5/19/1997 | CD Cal Petition Pending | 26 |
| Bill Bradford | 5/11/1988 | 98-05799 RSWL | Central | 7/20/1998 | Deceased (2008) | -- |
| Curtis Fauber | 5/16/1988 | 95-06601 GW | Central | 10/3/1995 | CD Cal Petition Pending | 26 |
| David Raley | 5/17/1988 | 93-02071 JW | Northern | 6/1/1993 | Relief Denied (2007) / Execution Stayed | 26 |

| Name | | | | | | |
|---|---|---|---|---|---|---|
| Theodore Wrest | 5/18/1988 | 95-00214 DDP | Central | 1/11/1995 | CD Cal Petition Pending | 26 |
| William Hart | 5/27/1988 | 05-03633 MMM | Central | 5/16/2005 | CD Cal Petition Pending | 26 |
| Armenia Cudjo | 5/31/1988 | 99-08089 JFW | Central | 8/9/1999 | Relief Granted (2013) | -- |
| Joselito Cinco | 6/10/1988 | | | | Deceased (1988) | -- |
| David Carpenter | 6/27/1988 | 00-03706 MMC | Northern | 10/6/2000 | ND Cal Petition Pending | 26 |
| Richard Samayoa | 6/28/1988 | 00-02118 W | Southern | 10/16/2000 | Relief Denied (2012) / Execution Stayed | 26 |
| Guy Rowland | 6/29/1988 | 94-03037 WHA | Northern | 8/26/1994 | Circuit Appeal Pending | 26 |
| Gary Hines | 7/8/1988 | 98-00784 TLN | Eastern | 5/1/1998 | ED Cal Petition Pending | 26 |
| Tracy Cain | 7/12/1988 | 96-2584 ABC | Central | 4/11/1996 | Circuit Appeal Pending | 26 |
| Dennis Webb | 8/15/1988 | 97-00956 VAP | Central | 2/13/1997 | CD Cal Petition Pending | 26 |
| William Dennis | 9/6/1988 | 98-021027 | Northern | 10/9/1998 | ND Cal Petition Pending | 26 |
| Jerry Frye | 9/12/1988 | 99-00628 LKK | Eastern | 3/29/1999 | ED Cal Petition Pending | 26 |
| Daniel Jenkins | 10/6/1988 | 07-01918 JGB | Central | 3/22/2007 | State Proceedings Pending | 26 |
| Charles Riel | 10/14/1988 | 01-00507 LKK | Eastern | 3/14/2001 | ED Cal Petition Pending | 26 |
| Richard Turner | 10/19/1988 | 09-07449 BRO | Central | 10/14/2009 | State Proceedings Pending | 26 |
| Jose Rodrigues | 10/21/1988 | 96-01831 CW | Northern | 5/17/1996 | ND Cal Petition Pending | 26 |
| Sammy Marshall | 10/27/1988 | | | | Deceased (1997) | -- |
| Teddy Sanchez | 10/31/1988 | 97-06134 AWI | Eastern | 11/20/1997 | ED Cal Petition Pending | 26 |
| Aurthur Halvorsen | 11/18/1988 | | | | State Proceedings Pending | 26 |
| Rodney Berryman | 11/28/1988 | 95-05309 AWI | Eastern | 4/27/1995 | Circuit Appeal Pending | 26 |
| Max Barnett | 11/30/1988 | 99-02416 JAM | Eastern | 12/8/1999 | State Proceedings Pending | 26 |
| Manuel Mendoza | 1/6/1989 | 03-06194 SJO | Central | 8/29/2003 | CD Cal Petition Pending | 25 |
| Herbert Coddington | 1/20/1989 | 01-01290 KJM | Eastern | 7/3/2001 | ED Cal Petition Pending | 25 |
| Reynaldo Ayala | 2/9/1989 | 01-00741 BTM | Southern | 4/27/2001 | Circuit Appeal Pending | 25 |
| Lester Ochoa | 3/20/1989 | 99-11129 DSF | Central | 10/22/1999 | CD Cal Petition Pending | 25 |
| Drax Quartermain | 4/10/1989 | | | | Deceased (2005) | -- |
| Rodney Beeler | 5/5/1989 | 96-00606 GW | Central | 1/29/1996 | CD Cal Petition Pending | 25 |
| James Scott | 5/18/1989 | 03-00978 ODW | Central | 2/10/2003 | CD Cal Petition Pending | 25 |
| Jeffrey Kolmetz | 5/18/1989 | | | | Deceased (1996) | -- |
| Noel Jackson | 6/2/1989 | 97-03531 MWF | Central | 5/9/1997 | State Proceedings Pending | 25 |
| Steven Crittenden | 6/12/1989 | 95-01957 KJM | Eastern | 10/26/1995 | Circuit Appeal Pending | 25 |

8

| Name | Date | Case No | District | Date | Status | |
|---|---|---|---|---|---|---|
| Jack Farnam | 6/15/1989 | 06-00917 SJO | Central | 2/15/2006 | State Proceedings Pending | 25 |
| Albert Cunningham | 6/16/1989 | 02-07170 GHK | Central | 9/13/2002 | Relief Denied (2013) / Execution Stayed | 25 |
| Louis Craine | 6/27/1989 | | | | Deceased (1989) | -- |
| George Smithey | 7/18/1989 | | | | Deceased (2010) | -- |
| David Welch | 7/25/1989 | 00-20242 RMW | Northern | 2/28/2000 | State Proceedings Pending | 25 |
| Ronald Seaton | 7/27/1989 | 04-09339 FMO | Central | 11/12/2004 | CD Cal Petition Pending | 25 |
| Clarence Ray | 7/28/1989 | 96-06252 LJO | Eastern | 11/8/1996 | State Proceedings Pending | 25 |
| James Blair | 8/9/1989 | 06-04550 VAP | Central | 7/20/2006 | CD Cal Petition Pending | 25 |
| Cynthia Coffman | 8/31/1989 | 06-07304 ABC | Central | 11/15/2006 | CD Cal Petition Pending | 25 |
| Robert Fairbank | 9/5/1989 | 98-01027 CRB | Northern | 3/16/1998 | Relief Denied (2011) / Execution Stayed | 25 |
| Manuel Alvarez | 9/14/1989 | 97-01895 GEB | Eastern | 10/8/1997 | ED Cal Petition Pending | 25 |
| David Lucas | 9/19/1989 | | | | State Proceedings Pending | 25 |
| David Rundle | 9/21/1989 | 08-01879 TLN | Eastern | 8/13/2008 | ED Cal Petition Pending | 25 |
| Robert Maury | 10/27/1989 | 12-01043 WBS | Eastern | 4/19/2012 | ED Cal Petition Pending | 25 |
| Terry Bemore | 11/2/1989 | 08-00311 LAB | Southern | 2/15/2008 | Circuit Appeal Pending | 25 |
| Richard Ramirez | 11/7/1989 | 07-08310 BRO | Central | 12/26/2007 | Deceased (2013) | -- |
| Stanley Davis | 11/15/1989 | | | | State Proceedings Pending | 25 |
| Randy Kraft | 11/29/1989 | 01-04623 AG | Central | 5/23/2001 | CD Cal Petition Pending | 25 |
| Hector Ayala | 11/30/1989 | 01-01322 IEG | Southern | 7/20/2001 | Circuit Appeal Pending | 25 |
| Jeffrey Hawkins | 1/31/1990 | 96-01155 TLN | Eastern | 6/19/1996 | ED Cal Petition Pending | 24 |
| Dean Carter | 2/6/1990 | 06-04532 RGK | Central | 7/20/2006 | Circuit Appeal Pending | 24 |
| Jon Dunkle | 2/7/1990 | 06-04115 PJH | Northern | 6/30/2006 | ND Cal Petition Pending | 24 |
| Alfredo Padilla | 2/7/1990 | 01-06305 LJO | Eastern | 10/4/2001 | Deceased (2008) | -- |
| Pedro Arias | 2/22/1990 | 99-00627 WBS | Eastern | 3/29/1999 | ED Cal Petition Pending | 24 |
| Dennis Lawley | 2/26/1990 | 08-01425 LJO | Eastern | 9/23/2008 | Deceased (2012) | -- |
| Larry Davis Jr. | 3/8/1990 | 96-002443 DT | Central | 4/5/1996 | Relief Denied (2004) / Deceased (2005) | -- |
| Mario Gray | 3/14/1990 | 07-05935 DSF | Central | 9/12/2007 | Deceased (2013) | -- |
| Mark Schmeck | 4/5/1990 | 13-05415 RS | Northern | 11/21/2013 | ND Cal Petition Pending | 24 |
| Tracey Carter | 4/20/1990 | 04-06524 DDP | Central | 8/6/2004 | State Proceedings Pending | 24 |
| Christopher Tobin | 4/24/1990 | | | | State Proceedings Pending | 24 |
| Richard Letner | 4/24/1990 | | | | State Proceedings Pending | 24 |
| Jerry Bailey | 5/16/1990 | | | | Deceased (1998) | -- |

| Name | | Case No. | District | | Status | |
|---|---|---|---|---|---|---|
| John Holt | 5/30/1990 | 97-06210 AWI | Eastern | 12/15/1997 | State Proceedings Pending | 24 |
| Maureen McDermott | 6/8/1990 | 04-00457 DOC | Central | 1/26/2004 | CD Cal Petition Pending | 24 |
| Mark Bradford | 7/3/1990 | 97-06221 TJH | Central | 8/19/1997 | CD Cal Petition Pending | 24 |
| Steven Catlin | 7/6/1990 | 07-01466 LJO | Eastern | 10/5/2007 | ED Cal Petition Pending | 24 |
| Ralph Yeoman | 7/10/1990 | | | | Deceased (2014) | -- |
| Raymond Steele | 7/24/1990 | 03-00143 GEB | Eastern | 1/24/2003 | ED Cal Petition Pending | 24 |
| Jarvis Masters | 7/30/1990 | | | | State Proceedings Pending | 24 |
| Kurt Michaels | 7/31/1990 | 04-00122 JAH | Southern | 1/16/2004 | SD Cal Petition Pending | 24 |
| Roland Comtois | 7/31/1990 | | | | Deceased (1994) | -- |
| Joseph Muselwhite | 9/25/1990 | 01-01443 LKK | Eastern | 7/26/2001 | Deceased (2010) | -- |
| Kristin Hughes | 10/2/1990 | 03-02666 JSW | Northern | 6/6/2003 | ND Cal Petition Pending | 24 |
| Evan Nakahara | 11/6/1990 | 05-04604 DDP | Central | 6/24/2005 | CD Cal Petition Pending | 24 |
| Isaac Gutierrez Jr. | 11/14/1990 | 05-03706 DOC | Central | 5/18/2005 | Deceased (2008) | -- |
| Paul Brown | 11/16/1990 | | | | Deceased (2004) | -- |
| Jackie Ray Hovarter | 11/30/1990 | | | | State Proceedings Pending | 24 |
| Milton Lewis | 12/6/1990 | 02-00013 TLN | Eastern | 1/3/2002 | ED Cal Petition Pending | 24 |
| Ramon Salcido | 12/17/1990 | 09-00586 MMC | Northern | 2/9/2009 | State Proceedings Pending | 24 |
| Raymond Gurule | 12/19/1990 | | | | Deceased (2007) | -- |
| Carmen Ward | 1/28/1991 | 06-02009 PA | Central | | State Proceedings Pending | 23 |
| James Majors | 2/4/1991 | 99-00493 MCE | Eastern | 3/12/1999 | ED Cal Petition Pending | 23 |
| Christopher Box | 2/22/1991 | 04-00619 AJB | Southern | 3/26/2004 | State Proceedings Pending | 23 |
| Paul Bolin | 2/25/1991 | 99-05279 LJO | Eastern | 3/11/1999 | ED Cal Petition Pending | 23 |
| Raymond Lewis | 3/6/1991 | 03-06775 LJO | Eastern | 12/9/2003 | ED Cal Petition Pending | 23 |
| Tauro Waidla | 3/8/1991 | 01-00650 AG | Central | 1/22/2001 | CD Cal Petition Pending | 23 |
| Richard Moon | 5/19/1991 | 08-08327 JAK | Central | 12/17/2008 | State Proceedings Pending | 23 |
| Robert McDonald | 5/31/1991 | | | | Deceased (1993) | -- |
| Ronald Jones | 6/4/1991 | 98-10318 JLS | Central | 12/28/1998 | CD Cal Petition Pending | 23 |
| John Sapp | 6/21/1991 | 04-04163 JSW | Northern | 9/30/2004 | State Proceedings Pending | 23 |
| Paul Watson | 6/27/1991 | | | | State Proceedings Pending | 23 |
| Curtis Ervin | 6/28/1991 | 00-01228 CW | Northern | 4/10/2000 | ND Cal Petition Pending | 23 |
| Clifford Bolden | 7/19/1991 | 09-02365 PJH | Northern | 5/28/2009 | State Proceedings Pending | 23 |

| Name | Date | Case Number | District | Date | Status | No. |
|---|---|---|---|---|---|---|
| Jesse Gonzalez | 7/28/1991 | 95-02345 JVS | Central | 4/12/1995 | State Proceedings Pending | 23 |
| Martin Navarette | 8/14/1991 | 11-07066 VAP | Central | 8/26/2011 | State Proceedings Pending | 23 |
| Anthony Townsel | 9/13/1991 | | | | State Proceedings Pending | 23 |
| Allen Morrison | 10/30/1991 | | | | State Proceedings Pending | 23 |
| James O'Malley | 11/21/1991 | | | | State Proceedings Pending | 23 |
| Michael Slaughter | 11/27/1991 | 05-00922 AWI | Eastern | 7/18/2005 | ED Cal Petition Pending | 23 |
| Michael Jones | 12/13/1991 | 04-02748 ODW | Central | 4/20/2004 | CD Cal Petition Pending | 23 |
| Dellano Cleveland | 12/19/1991 | 05-03822 SVW | Central | 5/24/2005 | CD Cal Petition Pending | 23 |
| Deondre Staten | 1/16/1992 | 01-09178 MWF | Central | 10/24/2001 | CD Cal Petition Pending | 22 |
| Richard Farley | 1/17/1992 | | | | State Proceedings Pending | 22 |
| Chauncey Veasley | 1/21/1992 | 05-03822 SVW | Central | 4/12/2005 | CD Cal Petition Pending | 22 |
| Robert Taylor | 1/30/1992 | 07-06602 FMO | Central | 10/11/2007 | CD Cal Petition Pending | 22 |
| Edward Bridges | 2/20/1992 | | | | Deceased (2008) | -- |
| Ricky Earp | 2/21/1992 | 00-06508 MMM | Central | 6/19/2000 | CD Cal Petition Pending | 22 |
| Colin Dickey | 2/27/1992 | 06-00357 AWI | Eastern | 3/31/2005 | ED Cal Petition Pending | 22 |
| Billy Waldon | 2/28/1992 | | | | State Proceedings Pending | 22 |
| Jose Casares | 3/13/1992 | | | | State Proceedings Pending | 22 |
| Richard Viera | 3/30/1992 | 05-01492 AWI | Eastern | 11/22/2005 | ED Cal Petition Pending | 22 |
| Gregory Smith | 4/3/1992 | 05-08017 DSF | Central | 11/9/2005 | State Proceedings Pending | 22 |
| Franklin Lynch | 4/28/1992 | | | | State Proceedings Pending | 22 |
| James Marlow | 5/8/1992 | 05-06477 ABC | Central | 8/31/2005 | CD Cal Petition Pending | 22 |
| Paul Watkins | 5/11/1992 | | | | State Proceedings Pending | 22 |
| Thomas Walker | 5/12/1992 | | | | Deceased (1997) | -- |
| Andrew Brown | 5/21/1992 | 04-03931 AG | Central | 6/2/2004 | CD Cal Petition Pending | 22 |
| Alfredo Valdez | 5/22/1992 | 10-05252 BRO | Central | 7/16/2010 | State Proceedings Pending | 22 |
| Marchand Elliott | 6/3/1992 | | | | State Proceedings Pending | 22 |
| Morris Solomon | 9/16/1992 | | | | State Proceedings Pending | 22 |
| Alfredo Prieto | 6/18/1992 | 05-07566 AG | Central | 10/20/2005 | CD Cal Petition Pending | 22 |
| Jack Friend | 6/19/1992 | | | | State Proceedings Pending | 22 |
| Maria Alfaro | 7/14/1992 | 07-07072 CJC | Central | 10/30/2007 | CD Cal Petition Pending | 22 |
| Stephen Cole | 7/16/1992 | 05-04971 DMG | Central | 7/7/2005 | CD Cal Petition Pending | 22 |
| Gregory Smith | 8/14/1992 | 04-03436 JSW | Northern | 8/19/2004 | ND Cal Petition Pending | 22 |

11

| Name | Date | Case Number | District | Date | Status | |
|---|---|---|---|---|---|---|
| Rodney San Nicolas | 8/31/1992 | 06-00942 LIO | Eastern | 7/20/2006 | ED Cal Petition Pending | 22 |
| Jessie Ray Moffett | 9/2/1992 | | | | Deceased (1998) | -- |
| Richard Stitley | 9/14/1992 | | | | State Proceedings Pending | 22 |
| Charles Richardson | 10/7/1992 | | | | State Proceedings Pending | 22 |
| James Tulk | 10/9/1992 | | | | Deceased (2006) | -- |
| Dannie Hillhouse | 10/13/1992 | 03-00142 MCE | Eastern | 1/24/2003 | ED Cal Petition Pending | 22 |
| Alphonso Howard | 10/20/1992 | 08-06851 DDP | Central | 10/17/2008 | CD Cal Petition Pending | 22 |
| Rudolph Roybal | 10/20/1992 | 99-02152 JM | Southern | 10/5/1999 | SD Cal Petition Pending | 22 |
| David Williams | 10/20/1992 | 12-03975 AG | Central | 5/7/2012 | State Proceedings Pending | 22 |
| Gerald Cruz | 10/26/1992 | | | | State Proceedings Pending | 22 |
| James Beck | 10/27/1992 | | | | State Proceedings Pending | 22 |
| Richard Tully | 12/4/1992 | | | | State Proceedings Pending | 22 |
| Sergio Ochoa | 12/10/1992 | 02-07774 RSWL | Central | 10/4/2002 | CD Cal Petition Pending | 22 |
| George Williams | 12/21/1992 | | | | State Proceedings Pending | 22 |
| Ricardo Roldan | 12/29/1992 | 09-06589 DOC | Central | 9/10/2009 | State Proceedings Pending | 22 |
| William Ramos | 1/8/1993 | 05-03752 SI | Northern | 9/16/2005 | ND Cal Petition Pending | 21 |
| John Lewis | 3/3/1993 | 11-06395 JAK | Central | 8/3/2011 | CD Cal Petition Pending | 21 |
| Gregory Tate | 3/5/1993 | | | | State Proceedings Pending | 21 |
| Joseph Danks | 4/2/1993 | 11-00223 LIO | Eastern | 2/9/2011 | State Proceedings Pending | 21 |
| Erik Chatman | 4/9/1993 | 07-00640 WHA | Northern | 1/31/2007 | State Proceedings Pending | 21 |
| Maurice Boyette | 5/7/1993 | 13-04376 WHO | Northern | 9/20/2013 | ND Cal Petition Pending | 21 |
| Omar Martinez | 5/10/1993 | 04-09090 PA | Central | 11/3/2004 | CD Cal Petition Pending | 21 |
| Anthony Oliver | 5/21/1993 | 10-08404 ODW | Central | 11/4/2010 | CD Cal Petition Pending | 21 |
| Albert Lewis | 5/21/1993 | 11-00766 ODW | Central | 1/26/2011 | State Proceedings Pending | 21 |
| Keone Wallace | 5/27/1993 | | | | State Proceedings Pending | 21 |
| Latwon Weaver | 5/28/1993 | | | | State Proceedings Pending | 21 |
| Warren Bland | 5/28/1993 | | | | Deceased (2001) | -- |
| Catherine Thompson | 6/10/1993 | | | | State Proceedings Pending | 21 |
| Vincente Benavides | 6/16/1993 | | | | State Proceedings Pending | 21 |
| Michael Combs | 6/21/1993 | 05-0 4777 ODW | Central | 6/30/2005 | CD Cal Petition Pending | 21 |
| Robert Curl | 7/15/1993 | | | | State Proceedings Pending | 21 |

| Name | Date | Case Number | District | Date | Status | |
|---|---|---|---|---|---|---|
| Mark Crew | 7/22/1993 | 12-04259 YGR | Northern | 8/13/2012 | ND Cal Petition Pending | 21 |
| Charles Stevens | 7/30/1993 | 09-00137 WHA | Northern | 1/12/2009 | ND Cal Petition Pending | 21 |
| Christian Monterroso | 8/12/1993 | 12-07888 DMG | Central | 9/13/2012 | CD Cal Petition Pending | 21 |
| Corvin Emdy | 8/19/1993 | | | | Deceased (1993) | -- |
| Richard Dehoyos | 8/27/1993 | | | | State Proceedings Pending | 21 |
| Cedric Harrison | 8/30/1993 | 09-05045 JW | Northern | 10/22/2009 | Deceased (2009) | -- |
| Enrique Zambrano | 9/8/1993 | 09-04917 LHK | Northern | 10/15/2009 | ND Cal Petition Pending | 21 |
| Eric Houston | 9/20/1993 | 13-05609 WHA | Northern | 12/4/2013 | ND Cal Petition Pending | 21 |
| Robert Smith | 9/24/1993 | 11-03062 EJD | Northern | 6/21/2011 | State Proceedings Pending | 21 |
| James Heard | 9/28/1993 | | | | State Proceedings Pending | 21 |
| Cleophus Prince | 11/5/1993 | | | | State Proceedings Pending | 21 |
| Abelino Manriquez | 11/16/1993 | | | | State Proceedings Pending | 21 |
| Herbert Koontz | 11/19/1993 | 03-01613 FCD | Eastern | 7/31/2003 | Deceased (2007) | -- |
| Jose Guerra | 11/22/1993 | | | | State Proceedings Pending | 21 |
| Eric Hinton | 12/10/1993 | 10-06714 DMG | Central | 9/9/2010 | CD Cal Petition Pending | 21 |
| Michael Huggins | 12/17/1993 | 06-07254 YGR | Northern | 11/22/2006 | State Proceedings Pending | 21 |
| Jerry Kennedy | 12/20/1993 | 13-02041 LKK | Eastern | 10/1/2013 | ED Cal Petition Pending | 21 |
| Lanell Harris | 1/12/1994 | | | | State Proceedings Pending | 20 |
| Steven Bell | 3/7/1994 | | | | State Proceedings Pending | 20 |
| Robert Wilson | 4/8/1994 | 07-00519 MWF | Central | 1/22/2007 | CD Cal Petition Pending | 20 |
| Christopher Sattiewhite | 4/25/1994 | | | | State Proceedings Pending | 20 |
| Tim Depriest | 5/27/1994 | 07-06025 JLS | Central | 9/17/2007 | CD Cal Petition Pending | 20 |
| Delaney Marks | 6/3/1994 | 11-02458 LHK | Northern | 5/19/2011 | ND Cal Petition Pending | 20 |
| Brian Johnsen | 6/9/1994 | | | | State Proceedings Pending | 20 |
| Milton Pollock | 6/10/1994 | 05-01870 SI | Northern | 5/5/2005 | State Proceedings Pending | 20 |
| James Robinson | 6/17/1994 | | | | State Proceedings Pending | 20 |
| Jaime Hoyos | 7/11/1994 | 09-00388 L | Southern | 2/26/2009 | SD Cal Petition Pending | 20 |
| Phillip Jablonski | 8/12/1994 | 07-03302 SI | Northern | 6/22/2007 | State Proceedings Pending | 20 |
| Walter Cook | 9/2/1994 | | | | State Proceedings Pending | 20 |
| Tomas Cruz | 9/9/1994 | 13-02792 JST | Northern | 6/18/2013 | ND Cal Petition Pending | 20 |

| Name | Date | Case No. | District | Date | Status | |
|---|---|---|---|---|---|---|
| Joseph Cook | 9/16/1994 | 12-08142 CJC | Central | 9/20/2012 | State Proceedings Pending | 20 |
| Mary Samuels | 9/16/1994 | 10-03225 SJO | Central | 4/29/2010 | CD Cal Petition Pending | 20 |
| Shaun Burney | 9/16/1994 | 10-00546 RGK | Central | 1/26/2010 | State Proceedings Pending | 20 |
| Bryan Jones | 9/19/1994 | | | | State Proceedings Pending | 20 |
| Ronnie Dement | 9/26/1994 | | | | State Proceedings Pending | 20 |
| Robert Jurado | 10/1/1994 | 08-01400 JLS | Southern | 7/31/2008 | SD Cal Petition Pending | 20 |
| Billy Riggs | 10/28/1994 | 09-04624 JAK | Central | 6/26/2009 | State Proceedings Pending | 20 |
| Carl Powell | 11/10/1994 | | | | State Proceedings Pending | 20 |
| Celeste Carrington | 11/23/1994 | 10-04179 RS | Northern | 9/16/2010 | ND Cal Petition Pending | 20 |
| Steven Bonilla | 1/20/1995 | 08-00471 CW | Northern | 1/22/2008 | ND Cal Petition Pending | 19 |
| Anthony Bankston | 1/20/1995 | | | | State Proceedings Pending | 19 |
| Edgardo Sanchez-Fuentes | 1/20/1995 | | | | State Proceedings Pending | 19 |
| Danny Horning | 1/26/1995 | 10-01932 JAM | Eastern | 7/21/2010 | State Proceedings Pending | 19 |
| Randall Wall | 1/30/1995 | | | | State Proceedings Pending | 19 |
| Steven Homick | 1/31/1995 | | | | State Proceedings Pending | 19 |
| Royal Clark | 2/3/1995 | 12-00803 LJO | Eastern | 5/16/2012 | State Proceedings Pending | 19 |
| Raymond Johns | 2/8/1995 | | | - | Deceased (2004) | -- |
| Keith Loker | 2/10/1995 | | | | State Proceedings Pending | 19 |
| Johnny Avila | 3/21/1995 | 11-01196 AWI | Eastern | 7/19/2011 | State Proceedings Pending | 19 |
| Randy Garcia | 3/23/1995 | | | | State Proceedings Pending | 19 |
| Hooman Panah | 3/26/1995 | 05-07606 RGK | Central | 10/21/2005 | Circuit Appeal Pending | 19 |
| Ernest Jones | 4/7/1995 | 09-002158 CJC | Central | 3/27/2009 | CD Cal Petition Pending | 19 |
| Glen Cornwell | 4/21/1995 | 06-00705 TLN | Eastern | 3/31/2006 | ED Cal Petition Pending | 19 |
| Mark Thornton | 5/15/1995 | | | | State Proceedings Pending | 19 |
| Greg Demetrulias | 5/22/1995 | 07-01335 DOC | Central | 2/28/2007 | Circuit Appeal Pending | 19 |
| Kerry Dalton | 5/23/1995 | | | | State Proceedings Pending | 19 |
| Ignacio Tafoya | 6/6/1995 | | | | State Proceedings Pending | 19 |
| Regis Thomas | 6/15/1995 | | | | State Proceedings Pending | 19 |
| Lester Virgil | 6/29/1995 | | | | State Proceedings Pending | 19 |
| Johnaton George | 7/17/1995 | | | | State Proceedings Pending | 19 |
| Christopher Geier | 7/21/1995 | 10-04676 R | Central | 6/24/2010 | State Proceedings Pending | 19 |

14

| Name | Date | Case No. | District | Date | Status | # |
|---|---|---|---|---|---|---|
| Charles Rountree | 8/11/1995 | | | | State Proceedings Pending | 19 |
| Christopher Lightsey | 8/15/1995 | | | | State Proceedings Pending | 19 |
| Sergio Nelson | 9/9/1995 | | | | State Proceedings Pending | 19 |
| Thomas Lenart | 10/6/1995 | 05-01912 MCE | Eastern | 9/21/2005 | State Proceedings Pending | 19 |
| John Beames | 10/11/1995 | 10-01429 AWI | Eastern | 8/9/2010 | ED Cal Petition Pending | 19 |
| Paul Hensley | 10/13/1995 | | | | State Proceedings Pending | 19 |
| Loi Vo | 10/18/1995 | | | | State Proceedings Pending | 19 |
| Stephen Hajek | 10/18/1995 | | | | State Proceedings Pending | 19 |
| Donald Smith | 10/19/1995 | | | | State Proceedings Pending | 19 |
| Leroy Wheeler | 10/19/1995 | | | | State Proceedings Pending | 19 |
| Stanley Bryant | 10/19/1995 | | | | State Proceedings Pending | 19 |
| William Suff | 10/26/1995 | | | | State Proceedings Pending | 19 |
| Caroline Young | 10/27/1995 | | | | Deceased (2005) | -- |
| Douglas Kelly | 11/8/1995 | | | | State Proceedings Pending | 19 |
| Ernest Dykes | 11/30/1995 | 11-04454 SI | Northern | 9/7/2011 | ND Cal Petition Pending | 19 |
| Demetrius Howard | 12/7/1995 | | | | State Proceedings Pending | 19 |
| John Cunningham | 1/12/1996 | | | | State Proceedings Pending | 18 |
| Alfredo Valencia | 1/23/1996 | | | | State Proceedings Pending | 18 |
| Valamir Morelos | 2/21/1996 | | | | State Proceedings Pending | 18 |
| Jerry Rodriguez | 2/21/1996 | | | | State Proceedings Pending | 18 |
| Steven Brown | 2/23/1996 | | | | State Proceedings Pending | 18 |
| Dexter Williams | 2/28/1996 | 12-01344 LJO | Eastern | 8/17/2012 | ED Cal Petition Pending | 18 |
| Richard Gamache | 4/2/1996 | | | | State Proceedings Pending | 18 |
| Andre Alexander | 4/23/1996 | 11-07404 JAK | Central | 9/8/2011 | State Proceedings Pending | 18 |
| Frank Carter | 4/25/1996 | | | | Deceased (2001) | -- |
| Robert Cowan | 5/8/1996 | | | | State Proceedings Pending | 18 |
| Dennis Ervine | 5/31/1996 | | | | State Proceedings Pending | 18 |
| Keith Taylor | 6/5/1996 | | | | State Proceedings Pending | 18 |
| Eric Leonard | 6/13/1996 | | | | State Proceedings Pending | 18 |
| Keith Doolin | 6/18/1996 | 09-01453 AWI | Eastern | 8/17/2009 | State Proceedings Pending | 18 |
| Daniel Whalen | 6/24/1996 | | | | State Proceedings Pending | 18 |

| Name | Date | Case No. | District | Date | Status | |
|---|---|---|---|---|---|---|
| Edward Morgan | 7/19/1996 | | | | State Proceedings Pending | 18 |
| Clifton Perry | 7/26/1996 | 11-01367 AWI | Eastern | 8/16/2011 | State Proceedings Pending | 18 |
| Raymond Butler | 7/29/1996 | | | | State Proceedings Pending | 18 |
| Lamar Barnwell | 8/9/1996 | | | | State Proceedings Pending | 18 |
| Freddie Fuiava | 8/19/1996 | 12-10646 VAP | Central | 12/12/2013 | CD Cal Petition Pending | 18 |
| Orlando Romero | 8/28/1996 | | | | State Proceedings Pending | 18 |
| Christopher Self | 8/28/1996 | | | | State Proceedings Pending | 18 |
| Albert Jones | 9/20/1996 | | | | State Proceedings Pending | 18 |
| John Riccardi | 9/20/1996 | | | | State Proceedings Pending | 18 |
| Bob Williams | 9/20/1996 | 09-01068 AWI | Eastern | 6/17/2009 | State Proceedings Pending | 18 |
| Richard Davis | 9/26/1996 | 13-00408 EMC | Northern | 1/29/2013 | ND Cal Petition Pending | 18 |
| Richard Leon | 10/1/1996 | | | | State Proceedings Pending | 18 |
| Richard Parson | 10/11/1996 | | | | Deceased (2011) | -- |
| Darrel Lomax | 10/16/1996 | 11-01746 JLS | Central | 2/28/2011 | State Proceedings Pending | 18 |
| Michael Whisenhut | 10/21/1996 | | | | State Proceedings Pending | 18 |
| Charles Case | 10/25/1996 | | | | State Proceedings Pending | 18 |
| James Thompson | 10/26/1996 | | | | State Proceedings Pending | 18 |
| Michael Elliot | 10/31/1996 | | | | State Proceedings Pending | 18 |
| Christopher Spencer | 11/7/1996 | | | | State Proceedings Pending | 18 |
| Brandon Taylor | 11/13/1996 | | | | State Proceedings Pending | 18 |
| George Contreras | 12/11/1996 | | | | State Proceedings Pending | 18 |
| Dewayne Carey | 12/16/1996 | | | | State Proceedings Pending | 18 |
| Michael Pearson | 12/18/1996 | | | | State Proceedings Pending | 18 |
| Scott Collins | 12/19/1996 | 13-07334 JFW | Central | 10/3/2013 | CD Cal Petition Pending | 18 |
| Maurice Harris | 12/20/1996 | 13-04026 PA | Central | 6/5/2013 | CD Cal Petition Pending | 18 |
| Richard Foster | 12/31/1996 | | | | State Proceedings Pending | 18 |
| Michael Ihde | 1/3/1997 | | | | Deceased (2005) | -- |
| Eric Bennet | 1/9/1997 | | | | State Proceedings Pending | 17 |
| Herbert McClain | 1/21/1997 | | | | State Proceedings Pending | 17 |
| Karl Holmes | 1/21/1997 | | | | State Proceedings Pending | 17 |
| Lorenzo Newborn | 1/21/1997 | | | | State Proceedings Pending | 17 |

16

| Name | Date | Case No. | District | | Status | |
|---|---|---|---|---|---|---|
| Stephen Redd | 2/28/1997 | | | | State Proceedings Pending | 17 |
| Jeffery Mills | 3/10/1997 | | | | State Proceedings Pending | 17 |
| Joseph Montes | 3/18/1997 | | | | State Proceedings Pending | 17 |
| Johnny Mungia | 4/7/1997 | | | | State Proceedings Pending | 17 |
| Johnathan D'Arcy | 4/11/1997 | | | | State Proceedings Pending | 17 |
| Gene McCurdy | 4/22/1997 | | | | State Proceedings Pending | 17 |
| Jimmy Palma | 6/11/1997 | | | | Deceased (1997) | -- |
| Richard Valdez | 6/11/1997 | | | | State Proceedings Pending | 17 |
| Daniel Silveria | 6/13/1997 | | | | State Proceedings Pending | 17 |
| John Travis | 6/13/1997 | | | | State Proceedings Pending | 17 |
| Robert Scully | 6/13/1997 | | | | State Proceedings Pending | 17 |
| Ramon Rogers | 6/30/1997 | | | | State Proceedings Pending | 17 |
| Lawrence Bergman | 7/8/1997 | | | | Deceased (2009) | -- |
| Bobby Lopez | 7/11/1997 | | | | State Proceedings Pending | 17 |
| Michael Martinez | 8/29/1997 | | | | State Proceedings Pending | 17 |
| Carlos Hawthorne | 9/5/1997 | | | | State Proceedings Pending | 17 |
| John Famalaro | 9/5/1997 | | | | State Proceedings Pending | 17 |
| Michael Bramit | 9/15/1997 | | | | State Proceedings Pending | 17 |
| Royce Scott | 9/17/1997 | | | | State Proceedings Pending | 17 |
| John Abel | 9/26/1997 | | | | State Proceedings Pending | 17 |
| Ronald Mendoza | 10/27/1997 | | | | State Proceedings Pending | 17 |
| Terrance Page | 10/31/1997 | | | | Deceased (2008) | -- |
| Frank Becerra | 10/31/1997 | | | | State Proceedings Pending | 17 |
| Sean Vines | 11/7/1997 | | | | State Proceedings Pending | 17 |
| Herminio Serna | 11/21/1997 | | | | State Proceedings Pending | 17 |
| James Trujeque | 11/21/1997 | | | | State Proceedings Pending | 17 |
| Frank Abilez | 12/4/1997 | | | | Deceased (2012) | -- |
| Gunner Lindberg | 12/12/1997 | 09-05509 MWF | Central | 7/28/2009 | State Proceedings Pending | 17 |
| Floyd Smith | 12/14/1997 | | | | State Proceedings Pending | 17 |
| Bill Poyner | 12/16/1997 | | | | Deceased (1998) | -- |
| Martin Mendoza | 12/23/1997 | | | | State Proceedings Pending | 17 |
| William Clark | 12/29/1997 | | | | State Proceedings Pending | 17 |

[1] The chart does not describe the case status of any individual sentenced after 1997 because for all but a small handful of those individuals, state proceedings are still ongoing, and none have completed the federal habeas process. In total, 397 of the 748 inmates currently on California's Death Row were sentenced to death between 1978 and 1997. *See* CDCR Condemned Inmate List; CDCR Summary at 2.

[2] Because most of the death sentences overturned by the California Supreme Court were overturned in the period between 1979 and 1986, inclusion of these sentences in Appendix A would not accurately reflect the current state of affairs in California's death penalty system. *See* Commission Report at 120 n.21 (noting that between 1979 and 1986, the California Supreme Court reversed 59 of 64 death judgments it reviewed, but that since that time, it has reversed death judgments less than 10 percent of the time).

[3] Despite having been granted relief by the federal courts, 10 of these 39 individuals are listed by the CDCR as being among the 748 inmates currently on Death Row. *See* CDCR Condemned Inmate List. In at least some of these cases, this fact may be explained by the State's intention to again seek the death penalty against these inmates in a new trial.

[4] The chart was compiled using publicly available information from the court dockets of the four federal judicial districts in California, the public docket of the California Supreme Court, and the CDCR's Condemned Inmate List (July 2014) and List of Inmates Who Have Died Since 1978 (2014).

[5] For inmates still on Death Row, the sentencing date listed on the chart is the sentencing date provided in CDCR's Condemned Inmate List.

[6] Federal habeas proceedings are initiated when the petitioner seeks appointment of federal habeas counsel, not when the petitioner's federal writ of habeas corpus is filed. Some individuals that have initiated federal habeas proceedings may still have state proceedings pending for exhaustion purposes. In such cases, the federal petition is effectively stayed while the state proceedings are completed.